STATE OF CONNECTICUT *v.* CHESTER HIGH
(5051)

BORDEN, DALY and O'CONNELL, Js.

Argued September 30—decision released December 8, 1987

*Leopold P. DeFusco,* special public defender, for the appellant (defendant).

*Robert J. O'Brien,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

O'CONNELL, J. This is an appeal by the defendant from a judgment of conviction of the crime of attempt to commit larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (3) and 53a-49. The issues presented on appeal are whether the trial court erred (1) in failing to inquire into the defendant's and defense counsel's claims of breakdown of the attorney-

client relationship, and (2) in denying defense counsel's request that new counsel be appointed in her place. We find no error.

The facts are not in dispute. The defendant was charged with attempt to commit larceny in the second degree and was represented by an assistant public defender. At the commencement of trial the defendant orally complained that he had not had sufficient contact with his attorney during the pendency of the case.[1] He also complained of being brought to the courthouse

---

[1] "The Defendant: The complaint I have with the attorney is I feel that I haven't been informed fully on my case on how we're going to go about each day. Each week I've been brought back and forth to court and haven't even been brought in front of the judge and I've been brought back and forth over a period of seven or more times. I have all the dates and I have written it out here as legible as possible on both complaints because I didn't have no access to the typewriter and I've been incarcerated now over 90 days and I haven't had one bond reduction. . . .

"The Court: Mr. High, Attorney Calderon was appointed to you as a public defender and under the law, when you apply for a public defender, it's because you're claiming indigency, that you cannot afford your own lawyer.

"The Defendant: Yes, I looked into the matter and I can't.

"The Court: Well, the law does not require that you have to like your lawyer or anything. You're saying that this is a complaint against your lawyer and maybe what you need to do is—you're a very articulate young man— is articulate and speak with her to improve the communications, because everything you told me is something that normally happens when people are brought back and forth and are unable to post bond.

"The Defendant: The only time I get to see her is when I'm brought to court. I called her office on numerous occasions and she came to visit me one time.

"The Court: That's probably because she had a very high case load which is unfortunately what happens in our system where you have only one case to worry about. And, obviously, if you haven't made bond, you're sitting there 24 hours a day worried about your case and your own personal situation. She has a great many other matters to do and they cannot include running back and forth to the Corrections Center to see you at will. So I can't do anything about your complaints.

"If you want to fire your lawyer, the only way that I can allow that to happen is if you were replacing her with a lawyer of your own choosing. Since you're not doing that, I've listened to your complaint and I'm just explaining to you there's nothing I can do and, hopefully, things will improve."

on numerous occasions without being brought before the judge. The defendant did not, however, ask that alternate counsel be appointed. The court addressed the defendant's concerns and explained the limitations placed upon public defenders by their heavy caseloads. The defendant was instructed to discuss his concerns further with his attorney and was advised that he could get a new lawyer only if he retained private counsel.[2] Following a recess, the trial resumed, at which time the assistant public defender orally moved that alternate counsel be appointed to represent the defendant, on the basis of the defendant's earlier complaint and on counsel's own representation of a breakdown in the attorney-client relationship. After a brief colloquy, the court denied the motion.[3] The trial continued, and the defendant was found guilty.

---

[2] We note that a defendant's indigency would not preclude him from representation by an alternate public defender in all circumstances. A blanket refusal to appoint alternate public defenders under all circumstances would be inappropriate and potentially unconstitutional. We limit our application of the court's denial of alternate counsel to the facts of the present case and do not approve of the court's statements or reasoning beyond the circumstances presented here.

[3] "Ms. Calderon: Yes, your Honor. I have an oral motion based on the oral motion that was made by Chester High earlier today that he was dissatisfied with me as counsel.

"I would ask that new counsel be appointed to him because of the breakdown in the attorney-client relationship in this case, and I cite [State v. Beckenbach, 198 Conn. 43, 501 A.2d 752 (1985)] for the further proposition that if new counsel should be appointed or retained, that there should be granted a reasonable continuance.

"The Court: I don't read Beckenbach to say what you said, counsel. Do you want to point that out to me?

"Ms. Calderon: I'm relying on that case in the second part of my argument, that a reasonable continuance be granted should new counsel be appointed.

"The Court: That's not what I understand you to say, that it said that if there's a request, whether appointed or on his own, that a continuance should be granted.

"First of all, there is no request for a continuance. Mr. High, as I understood, said he had a complaint to make and Beckenbach does not overrule previous decisions that say just being unhappy with your lawyer does not

## I

The defendant first claims error in the trial court's failure to inquire into the substance of the complaint that the attorney-client relationship had broken down.

The controlling precedent in this state regarding sixth amendment violations based upon a trial court's refusal to grant a defendant's request for substitute counsel is *State* v. *Drakeford,* 202 Conn. 75, 519 A.2d 1194 (1987). In that case, the defendant asked the court to appoint a public defender after a disagreement arose between the defendant and his privately retained counsel. Despite the vehement protests of the defendant, his request was denied. The defendant in *Drakeford* made claims, inter alia, identical to those put forth by this defendant; namely, that the trial court erred in failing to inquire into the defendant's request for new counsel and in failing to appoint alternate counsel. Id., 82. The *Drakeford* court found no error, holding that the trial court did not, under the circumstances, abuse its discretion in denying the defendant's motion. Id., 84.

With regard to the failure of the trial court to inquire into the underlying reasons behind a request for alternate counsel, the court stated in *Drakeford* that "a trial judge's failure to inquire into the defendant's request for new counsel where the defendant has already made known the reasons for his request is not error. *McKee* v.

mean that you're entitled to appointment of a new public defender. This is a public defender case and, he's going to bring in his own counsel, which he was not making a request to do—plus, there has to be a showing because *Beckenbach* did not overrule previous decisions if you read it as I just did. There has to be a showing of an inadequate misrepresentation and Mr. High is not saying he had a lawyer or that he wants who couldn't be here for whatever reason.

"There is no request. I don't think that argument is appropriate and I'm going to deny your motion.

"You may have an exception.

"Ms. Calderon: Exception."

*Harris,* [649 F.2d 927, 933 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982)] . . . ." Id., 82. " '[W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known.' " *McKee* v. *Harris,* supra, 934, quoting *Brown* v. *United States,* 264 F.2d 363, 369 (D.C. Cir.) (Burger, J., concurring), cert. denied, 360 U.S. 911, 79 S. Ct. 1299, 3 L. Ed. 2d 1262 (1959).

In the present case, the reasons for the defendant's dissatisfaction were known to the court. The transcript discloses that the defendant was given not only an opportunity to place the reasons for his complaint before the court, but also an opportunity to articulate the facts underlying his dissatisfaction.[4] In addition, because the public defender cited no additional rationale as a basis for her motion for alternate counsel, but merely stated that her motion was "based upon" the defendant's earlier request, it is difficult to imagine that additional grounds for dissatisfaction would have been gleaned by the court through a more probing inquiry. In this case the reasons for the defendant's complaint were sufficiently stated on the record. No further inquiry by the trial court was necessary.

## II

The defendant's second claim of error concerns the trial court's failure to appoint alternate counsel. Given the circumstances of this case we find no fault with the trial court's action.

---

[4] See footnotes 1 and 3, supra.

There can be no dispute that a criminal defendant has a constitutional right to the effective assistance of counsel. *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985); that right, however, is not without limitation. For example, the right to counsel does not include the " 'unbridled right to discharge counsel *on the eve of trial.* . . .' " (Emphasis in original.) *State* v. *Drakeford,* supra, 83, quoting *United States* v. *Grow,* 394 F.2d 182, 209 (4th Cir.), cert. denied, 393 U.S. 840, 89 S. Ct. 118, 21 L. Ed. 2d 111 (1968). This limitation applies to both private counsel retained by an individual defendant as well as court appointed counsel. See *State* v. *Gethers,* 193 Conn. 526, 543, 480 A.2d 435 (1984) and cases cited therein. Furthermore, it is clear that the right to effective assistance of counsel does not include an "unlimited opportunity to obtain alternate counsel." *State* v. *Watson,* 198 Conn. 598, 610, 504 A.2d 497 (1986). Inherent in these limitations is a concern for unwarranted interruptions in the administration of justice. "While courts must be assiduous in their defense of an accused's right to counsel, that right may not be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.' " *United States* v. *Calabro,* 467 F.2d 973, 986 (2d Cir. 1972), quoting *United States* v. *Bentvena,* 319 F.2d 916, 936 (2d Cir.), cert. denied sub nom. *Ormento* v. *United States,* 375 U.S. 940, 84 S. Ct. 345, 11 L. Ed. 2d 271 (1963); see also *United States* v. *DiTommaso,* 817 F.2d 201, 219 (2d Cir. 1987). With these competing interests in mind, we review the actions of the trial court in the case at bar.

The standard of review to be applied when reviewing a denial of a request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request.

*State* v. *Drakeford,* supra, 83. In the present case, we find no abuse of that discretion. The trial court had before it the defendant's complaint concerning his representation. It is clear that the trial judge understood the defendant's concerns and was able to respond directly to them. In addition, the trial court reviewed with defendant's counsel, clearly and precisely, the factual record at issue in its denial of her motion for alternate counsel.

"It is the province of the trial court to determine whether there is a factual basis for disqualification of counsel. . . . In the absence of a factual record showing an abuse of discretion, the trial court's failure to permit the withdrawal of counsel is not reversible error." *State* v. *Watson,* supra, 610. Having reviewed the entire record in the present case, we find no abuse of discretion.

There is no error.

In this opinion the other judges concurred.