STATE OF CONNECTICUT *v.* WILLIAM H. BETHEA
(8607)

SPALLONE, CRETELLA and LANDAU, Js.

Argued October 3, 1990—decision released January 22, 1991

*William A. Collier,* special public defender, for the appellant (defendant).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *James G. Clark,* assistant state's attorney, and *Ted Diamant,* legal intern, for the appellee (state).

CRETELLA, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70, kidnapping in the first degree in violation of General Statutes § 53a-92, and assault in the second degree in violation of General Statutes § 53a-60.[1] He claims that the trial

---

[1] The defendant was acquitted of a sexual assault charge that was the subject of a separate information stemming from an incident involving

court (1) should not have admitted the victim's recorded and unrecorded statements to the police as evidence under the constancy of accusation exception to the hearsay rule, (2) should have allowed new counsel to be appointed after a breakdown of communications between the defendant and his court-appointed public defender, and (3) should have ordered a presentencing psychiatric evaluation under General Statutes § 17-244. We reject these claims and affirm the trial court's judgment.

The principal witnesses called by the state were the victim, Detective John Flynn, and Officers Patrick Redding and Michael Quinn of the New Haven police department. The victim testified that the defendant abducted her while she was walking to an all night convenience store in New Haven. She testified that the defendant pulled along side her in his automobile, jumped out, and, while holding a knife to her throat, started "talking about some sex." He then grabbed her by the hair, forced her into his car and sped away. Once the car was in motion, he again threatened her with the knife. When he later stopped the car, the victim escaped from the vehicle. The defendant then chased and caught her, threatened her with the knife again, kicked her in the face, and, while jabbing her with the knife, forced her back into the car. He pulled her coat, sweater and bra over her head and continually told her that he wanted sex.

The police arrived after having been called by an onlooker. As the police approached, the victim jumped out of the car and ran away. The police officers found her bloodied and yelling for help. The defendant, who had run from the car, was chased and apprehended and the victim identified him as her attacker. Quinn asked

---

another victim. The informations were consolidated for trial and resulted in separate judgments. This appeal involves only the judgment of conviction.

the victim to tell him her version of the events at the scene. Later, at the police station, Flynn tape-recorded additional statements made both by this victim and by a victim of a separate attack by the defendant. See footnote 1, supra. A transcript was made of these taped statements and signed by each victim.

At trial, the defendant testified that he had picked up the victim of the incident in question at her request. He asserted that once she was in his car she asked him for money, and he gave it to her indicating that he wanted sexual favors in return. He further testified that she took the money and exited the car without keeping her end of the bargain and that this was when he ran after her.

Quinn testified about his interview with the victim at the scene and, over the defendant's objections, was permitted to repeat the victim's account of the events. The court allowed this testimony under the constancy of accusation doctrine.

When Flynn took the stand to testify, the prosecutor proposed that the tape recorded statements of the victims would also be offered under the constancy of accusation doctrine. After extensive discussion and objection by the defendant, the court ruled, in the absence of the jury, that because Flynn was available for cross-examination the tapes could be played for the jury.

The defendant first claims that the court improperly admitted the recorded and unrecorded statements under the constancy of accusation exception to the hearsay rule. He asserts that the constancy of accusation exception is not a true hearsay exception, that it lacks the safeguards ensuring that only trustworthy and reliable evidence be admitted, and that this excep-

tion was an improper basis for the admission of the victims' tape recorded statements.[2]

Long standing precedent set by our Supreme Court demands that the following criteria be met before a witness can testify under what has consistently been labeled the constancy of accusation exception to the hearsay rule: (1) the court must balance the probative force of the testimony against its prejudicial effect; (2) the crime charged must be sex related; (3) the witness must be one to whom the victim complained about the offense; (4) the accusation must have been made at a time when it was natural for the victim to have made it; and (5) the victim must first testify, in court, as to the facts of the alleged occurrence. *State* v. *Dabkowski,* 199 Conn. 193, 199, 506 A.2d 118 (1986). Once the witness takes the stand, (1) the court may presume that the victim has been impeached by a suggestion of recent contrivance; *State* v. *Ouellette,* 190 Conn. 84, 98, 459 A.2d 1005 (1983); (2) the witness may testify as to the fact that the victim complained to her as well as to the details of the victim's complaint, and (3) the court must give limiting instructions to explain that the evidence is not offered to prove the truth of the matter asserted but only to corroborate and accredit the

---

[2] As a preliminary matter, we note that the state argues that we should not review the issue of the admission of the tape into evidence because although the defendant objected to constancy of accusation testimony in general, he never submitted proposed jury instructions to limit the admission of this evidence for corroborative purposes, or objected to the court's instruction as to the limited purpose for which the tape was introduced. We reject this argument. The record reveals that when the defendant objected to the admission of this evidence under the constancy of accusation doctrine, the trial court overruled the objection and indicated that the doctrine was widely accepted. The court then asked the defendant if he had a separate objection as to the admissibility of the tape itself. The defendant replied, "My objection is essentially the same." We consider this statement to have adequately preserved the defendant's right to have this court review the doctrine of constancy of accusation including the subissues of whether this matter involves a hearsay exception or corroboration of a prior statement of the victim.

prior testimony of the victim. *State* v. *Dabkowski,* supra; see also *State* v. *Hamer,* 188 Conn. 562, 564, 452 A.2d 313 (1982); *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945).

The defendant points out that in *State* v. *Ouellette,* supra, 98–99, our Supreme Court held that constancy of accusation is actually a subcategory of prior consistent statement evidence, and argues that if the witness' testimony is analyzed *strictly* as prior consistent evidence testimony, (1) it should not be considered as hearsay at all, but as nonhearsay, (2) it should not be classified as an exception to the rule against hearsay, and (3) the court should not permit details of the event to be relayed to the jury by this witness. To remedy his confusion with the existing precedent in this state, the defendant suggests that we overturn years of Supreme Court precedent and hold that the constancy of accusation exception is outdated and invalid.

The constancy of accusation doctrine has its origins in common law. Since 1876, statements admitted under the constancy of accusation theory have been labeled by Connecticut courts as exceptions to the hearsay rule,[3] and admitted only "as corroborative evidence to strengthen the credit of the principal witness by showing constancy in her declarations." *State* v. *Kinney,* 44 Conn. 153, 154 (1876); *State* v. *Sebastian,* 81 Conn. 1, 5, 69 A. 1054 (1908).

In the following, more recent cases, the Connecticut Supreme Court has continued to analyze constancy of accusation testimony as admissible as an exception to the hearsay rule: *State* v. *Rodgers,* 207 Conn. 646, 649,

---

[3] In *State* v. *Kinney,* 44 Conn. 153, 154, 26 A.R. 436 (1876), the Supreme Court stated that "[t]he evidence objected to is open to all the objections that apply to hearsay testimony." To support this proposition the court cited two treatises, five English common law cases, and cases from New Jersey, Georgia, Texas and Alabama.

542 A.2d 1136 (1988); *State* v. *Dabkowski,* supra; *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971); *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969).

In short, the Supreme Court has consciously created a hybrid rule of law to assist victims of sexual assault who are at first hesitant to report sex related crimes and are apt to confide the details of the crime to friends, relatives, or the police. The Supreme Court is satisfied that this doctrine, rather than disadvantaging the defendant, supplies a fertile field for cross-examination of the victim and assists the factfinder in ascertaining where the truth lies. See *State* v. *Pollitt,* 205 Conn. 61, 76–78, 530 A.2d 155 (1987).

While the rule of law created over the past 120 years defies standard categorization, it remains consistent from case to case. Attempts to modify or restructure the rule in any way have been repeatedly rejected by both the Supreme Court and this court. Cf. *State* v. *Rodgers,* supra (defendant requested that doctor not be permitted to testify as to corroborating evidence because victim was unconscious when assaulted); *State* v. *Pollitt,* supra (defendant claimed that the additional witness' testimony was used solely to "inflame the jury" and thus constituted a misuse of the doctrine); *State* v. *Dabkowski,* supra, 197–99 (defendant asked that precedent be overruled in light of the breadth of the constancy of accusation exception and contemporary development in law and psychiatry); *State* v. *Velez,* 17 Conn. App. 186, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989) (defendant argued that constancy of accusation testimony should not have been considered because it was inconsistent with victim's testimony in all aspects); *State* v. *Saraceno,* 15 Conn. App. 222, 545 A.2d 1116,

cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988) (defendant urged this court to modify the constancy of accusation doctrine).

In light of the above, we decline the defendant's invitation to overturn the constancy of accusation exception to the hearsay rule and we conclude that the officer's testimony was properly admitted under this doctrine. This does not conclude our inquiry, however. We must now address the defendant's additional assertions that the court improperly admitted the tape recordings while Flynn was on the stand, and that the court's limiting instructions to the jury were inadequate.

Whenever a witness in any type of court proceeding is permitted to testify under any accepted legal theory as to statements that were either made to the witness or overheard by the witness, the trier of fact must determine how accurate the witness' testimony is, and whether the witness accurately and credibly related what was told to or overheard by the witness. After testifying, the witness is available for cross-examination to test the accuracy of the witness' recollections. In the present matter, the state has attempted to forestall any possible inaccuracies, lapse of memory, or misstatements by Flynn as to what was said to him by the victim. There could be no better evidence as to what the victim told Flynn than a tape recorded statement in the victim's own words and voice as to the events that she described to him.

The defendant also argues that the admission of the tape was prejudicial and inflamatory. We are not persuaded. The defendant had full opportunity to cross-examine both the victim and Flynn. We conclude that the trial court struck a proper balance among all of the competing considerations with which it was faced, and that the tape recorded statement of the victim was

properly admitted into evidence. See *State* v. *Pollitt,* supra, 74–75; *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

As noted above, the defendant also argues that the court did not properly instruct the jury as to the limited purpose for which the challenged testimony could be used. We disagree. The defendant was charged with two separate informations, each one involving a different victim. The state had each of the victim's tapes played for the jury. The court heard and ruled upon the objections of the defendant in the absence of the jury. After the jury was brought in, the state followed the usual procedure of having each of the tapes admitted. The defendant's objection to the playing of the tapes was made again in the presence of the jury and the court again overruled the objection. The jurors were then briefly advised by the court prior to the playing of the first tape, that of the victim of the incident not in issue here, as to the theory of constancy of accusation, and they were informed that the tape "is offered to corroborate the testimony of the victim given here in court. I will give you further instructions on how you consider this, but it is basically to see whether or not it corroborates, it supports, it is consistent with the testimony that [the other victim] gave you in court when she testified yesterday."

Although this similar brief limitation on the use of the tape was not repeated prior to the playing of the second tape, that of the victim of the incident in question, the record clearly establishes that there could be no confusion in the minds of the jury as to the nature and purpose of the second tape.

In addition, in its final jury instructions, the court gave complete and proper limiting instructions as to the purpose of the taped statements advising the jury

that they had not been offered to prove the truth of the matters asserted therein, but simply to corroborate and to accredit the testimony of the victims who had previously testified. We conclude, therefore, that the defendant's claim is without merit.

The defendant's next claim is that it was improper for the court to refuse to allow counsel to withdraw on the basis of a breakdown of communications and cooperation between the defendant and his court-appointed public defender.

The transcript of the court proceedings clearly establishes that on numerous occasions the defendant attempted to disrupt the trial by utilizing such tactics as walking from the courtroom into the holding room, refusing to obey instructions of the court, refusing to engage in any meaningful dialogue with the court when the court attempted to address his objections, refusing to take an oath properly when he indicated that he wanted to testify in his own behalf, refusing to leave the holding cell in order to be present during the trial, and trying the judge's patience almost to the breaking point. The transcript further reveals that the trial court did its very best to protect the rights of the defendant including initiating a very complete dialogue about the defendant's request to represent himself, and cautioned the defendant as to the dangers of self-representation including the responsibilities that the defendant would be undertaking. Ultimately, the defendant stated that he did not want to defend himself even though he did assert that he was not satisfied with the defense that his court-appointed counsel was providing for him.

It is within the discretion of the trial court to decide whether the circumstances that occur during a particular trial warrant the appointment of a new counsel. *State* v. *Gonzalez,* 205 Conn. 673, 683, 535 A.2d 345

(1987). If supported by a substantial reason the request for substitution of counsel should be granted. *State* v. *Drakeford,* 202 Conn. 75, 83, 519 A.2d 1194 (1987). The right of an accused to counsel may not, however, be manipulated so as to obstruct the orderly procedure in courts. See *State* v. *Crenshaw,* 210 Conn. 304, 314, 554 A.2d 1074 (1989); *State* v. *Morico,* 14 Conn. App. 140, 143–44, 539 A.2d 1033, cert. denied, 208 Conn. 812, 546 A.2d 281 (1988); *State* v. *High,* 12 Conn. App. 685, 690, 533 A.2d 1217 (1987). We conclude that the defendant has not met the substantial burden of showing that the court abused its discretion in failing to relieve counsel. " 'A defendant is not "entitled to demand a reassignment counsel simply on the basis of a 'breakdown in communication' which he himself induced." ' " *State* v. *Gonzalez,* supra, 684. The record before us clearly establishes that the defendant alone was responsible for any lack of communication.

The defendant's final claim is that the court should have granted the defendant's motion for a presentence psychiatric evaluation pursuant to General Statutes § 17-244. Under that statute a court may order a psychiatric evaluation of a defendant only if "it appears to the court that such person is mentally ill and dangerous to himself or others." It is within the discretion of the trial court to order such an examination and in the absence of a clear showing by the defendant that the trial court has abused its discretion, we will not find that the court improperly denied the psychiatric examination. See *State* v. *Gates,* 198 Conn. 397, 403, 503 A.2d 163 (1986).

The record reveals that the court's observation at trial was that the defendant was not mentally ill and found that there was no apparent need to order the readministration of his psychiatric medication by prison officials. The observations and finding of the trial court must be accorded great weight. The court had ample

24

first hand knowledge of the defendant on which to make an informed judgment and its denial of the motion for a psychiatric examination was not an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

