STATE OF CONNECTICUT *v.* DAVID BISPHAM
(AC 15820)

O'Connell, C. J., and Spear and Freedman, Js.

Argued December 5, 1997—officially released March 17, 1998

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Lisa Herskowitz*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kevin Murphy*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[1] sexual assault in the second degree in violation of General Statutes (Rev. to 1993) § 53a-71 (a) (1)[2] and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[3] On appeal,

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes (Rev. to 1993) § 53a-71 (a), as amended by Public Acts 1993, No. 93-340, § 2, provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be

the defendant claims that the trial court improperly (1) summarized the parties' evidence during its charge to the jury in a manner unduly favorable to the state and (2) admitted the victim's written statement as constancy of accusation evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of November 19, 1993, the defendant was at an apartment shared by his girlfriend, Carmen, and her friend, Markeesha. Also present were Markeesha's boyfriend, Patrick, and Markeesha's fifteen year old sister, the victim. At approximately midnight, the victim, who had first tried to share a makeshift bed in the living room with Carmen and the defendant, went into a bedroom to sleep alone. At approximately 7 a.m., the defendant, wearing only boxer shorts, entered the room where the victim was sleeping. The victim awoke when the defendant began kissing her. As the victim protested, the defendant covered her mouth with his hands and pinned down her arms with his elbows. He then engaged in sexual intercourse with her.

The defendant left the apartment soon afterward, and the victim reported the assault to Markeesha and Carmen. Carmen called the police, who arrived a short time later, and an officer interviewed the victim. The police located the defendant at his residence in Hartford and arrested him. The victim was taken to Mount Sinai Hospital in Hartford where she was examined by hospital staff members. They collected evidence using a rape kit and completed an emergency room medical report. A police officer interviewed the victim a second time and she gave a written statement concerning the assault. Additional facts will be discussed as the context requires.

fined not more than five hundred dollars or imprisoned not more than ten years or both."

I

The defendant first claims that the trial court summarized the scientific evidence presented by the parties in a manner that was unduly favorable to the state. In support of this claim, he makes two assertions. First, the defendant claims that the trial court inaccurately characterized the testimony of the state's expert witness as firmly concluding that the apparent inconsistencies in the results of the victim's rape kit tests were caused by the hospital's testing procedure.[4] Second, the defendant claims that the trial court failed to instruct the jury on several findings made by the defendant's expert witness and misstated other portions of that

---

[4] The state asked the following questions and elicited the following answers from Sanders Hawkins, its expert witness, who was the bureau chief of the state department of health laboratory:

"Q. Would you describe the findings for the smears and the swabs as inconsistent?

"A. Normally, yes.

"Q. In this case would you describe them as inconsistent?

"A. Not necessarily.

"Q. Why not?

"A. If, in fact, when the person presented herself at the hospital there are a couple of things that could have happened and different procedures are followed at different hospitals. Some—

"[Defense Counsel]: Your Honor, I'm going to object . . . .

"The Court: Exception may be noted. You may continue, doctor.

"A. At some hospitals when specimens are taken the nurse or physician will take the specimen with one swab and make the smear from that swab. And he does this by inserting the swab into the vagina, trying to collect material on it and taking it out and pressing that cotton tip onto the slide. Some hospitals also use that same slide—that same swab to prepare a slide for themselves to determine whether or not motile sperm are present. That may or may not be the same swab that's sent to my laboratory for analyses. And what he might do is take another swab and go into the vagina and then send that swab to me for analyses for the acid phosphates. So even though it may appear to be inconsistent that we found sperm on the swab and no acid phosphates on the swab, it could have been that either he removed most of the material in making the smear from the swab, leaving very little there to do my analyses. Or he sent me a separate swab and when he collected the specimen, missed the area where the seminal fluid might have been inside the vagina."

witness' testimony. We will address these two claims in turn.

## A

The defendant first claims that the trial court inaccurately characterized the testimony of the state's expert witness, Sanders Hawkins, bureau chief for the Connecticut department of health laboratory, as definitively concluding that the apparent inconsistencies in the results of the victim's rape kit tests were caused by the hospital's testing procedure.

At trial, the state presented Hawkins to testify regarding the results of the rape kit tests performed on the victim. He explained that depending on the procedure followed by the hospital in administering the rape kit tests, it was not necessarily inconsistent for there to be no evidence of seminal fluid found on the cotton swabs used on the victim, although sperm cells were detected on the victim's smear slides.

After both parties presented their closing arguments, the trial court summarized some of the testimony of the expert witnesses as part of its instructions to the jury. The defendant took exception to the trial court's treatment of Hawkins' testimony, asserting, "Specifically, Your Honor recited that [Hawkins] gave his opinion that the reason for the absence of semen from the swab was the procedure you described, the repeated use of the swab and the wiping off of the seminal material or that it might not have come into contact with that area of the vagina in which seminal material was present. [Hawkins] testified that that sometimes happens, that it can happen. But he certainly and he directly admitted on my cross-examination that he had no basis to conclude that that is, in fact, what happened here. Merely that it is a possibility that sometimes occurs."

The standard of review of jury instructions is well established. The trial court has broad discretion to comment on the evidence. *State* v. *Marra*, 222 Conn. 506, 538, 610 A.2d 1113 (1992). "A charge to the jury is not to be critically dissected nor are individual instructions to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Taylor*, 196 Conn. 225, 231, 492 A.2d 155 (1985). In *State* v. *Rumore*, 28 Conn. App. 402, 411, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992), this court stated that "[a] trial court often has not only the right, but also the duty to comment on the evidence. . . . Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. . . . The test of a court's instruction is whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.)

Here, the trial court began its jury instructions by stating, "You [the jurors] are the sole judges of the facts. No matter what the attorneys have said concerning the facts, and no matter what I may say concerning the facts, it's your recollection of the facts which must guide you in determining the case." The trial court then summarized the testimony of Hawkins as follows: "As I recall, the testimony of Dr. Hawkins was that . . . he did have an opinion concerning the fact that the vaginal swab had no semen. And his opinion was that when the swab was used it was wiped off onto the smear and had, therefore, wiped off the semen that was on the

swab. Or that the swab was used in an area of the vagina where semen was not present." At the end of its instructions to the jury, the trial court again underscored the jury's fact-finding role, stating, "I've referred to certain evidence only to attempt to illustrate my instructions of law. I have not meant to emphasize certain evidence or to avoid the mention of other evidence. You must consider all the evidence and *where your recollection differs from mine, it's your recollection that must decide the case.*" (Emphasis added.)

The testimony of Hawkins was clear that he did not have conclusive information as to why there was no seminal fluid on the vaginal swab. Any misstatements the trial court may have made concerning Hawkins' testimony, however, were presumably cured by the court's repeated charge that the jury's recollection of the evidence controlled. We conclude that the court's comments, if inaccurate, were not such as to warrant a new trial. See *State* v. *Butler*, 207 Conn. 619, 629–30, 543 A.2d 270 (1988); *State* v. *Pollitt*, 205 Conn. 132, 156–57, 531 A.2d 125 (1987).

B

The defendant next claims that the trial court unduly favored the state's case by failing to instruct the jury on several conclusions drawn by the defendant's expert witness, Richard Cunningham, senior forensic scientist at Lifecodes Corporation, and by misstating other portions of Cunningham's testimony. Specifically, the defendant asserts that during its charge to the jury, the trial court improperly (1) omitted Cunningham's testimony regarding the absence of one of the defendant's genetic markers[5] from the victim's vaginal swab, (2) omitted Cunningham's testimony on the possible origins of the unknown genetic marker found on the

---

[5] Cunningham explained that every person's unique genetic pattern is composed of specific genetic markers.

victim's swab and (3) commented that Cunningham had referred to the presence of the unknown genetic marker as "insignificant." We decline to review these contentions because none was preserved at trial.

At trial, the defense presented Cunningham, who had performed comparative DNA testing on specimens from the victim and the defendant. He testified that the vaginal swab taken from the victim did not exhibit a certain genetic marker that was present in the defendant's blood sample, but that it did exhibit a very faint genetic marker that was not present in either the victim's or the defendant's blood samples. He also stated that the presence of this foreign genetic marker was not significant because it was so faint and, as such, was to be "interpreted with caution" according to the manufacturer of the rape kit.

After the trial court charged the jury, the defendant made no request for a further charge to rectify the trial court's alleged omissions regarding Cunningham's testimony. In addition, the defendant did not directly object to the trial court's statement that Cunningham had characterized the unknown genetic marker as "insignificant." Instead, the defendant merely protested that the trial court's treatment of Cunningham's testimony was "extremely limited" and "inaccurate." These complaints raised by the defendant were not sufficiently distinct to preserve this portion of his claim on appeal. *State* v. *Streater*, 36 Conn. App. 345, 359, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995); see also Practice Book § 4061. This court has declared that a defendant must " 'state distinctly the matter being objected to immediately after the conclusion of the charge' " for his claim of error to be reviewable on appeal. *State* v. *Streater*, supra, 359.

Further, the defendant's unpreserved claim concerning the trial court's jury charge on the genetic marker

evidence is not entitled to review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the claim is not of constitutional magnitude.[6] "It is not a constitutional issue because it related solely to the jury's consideration of a piece of evidence. The instruction was purely evidentiary in nature. . . . Under these circumstances, review of this claim under *Golding* is inappropriate." (Citation omitted.) *State* v. *Smart*, 37 Conn. App. 360, 376, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995).[7] The defendant's claim, being evidentiary in nature, fails to satisfy the second prong of *Golding*, which requires that it be constitutional in nature.

## II

The defendant's second claim on appeal is that the trial court improperly admitted the victim's written statement as constancy of accusation evidence. At trial, the state presented Francis Hynes, a Hartford police officer who interviewed the victim regarding the assault, as a constancy of accusation witness. Hynes first testified as to the victim's account of the assault during his interview of her at Carmen's apartment. Hynes then testified that he had interviewed the victim a second time at Mount Sinai Hospital, where he took a written statement from her regarding the assault. The state did not ask Hynes to testify from memory as to the substance of the victim's written statement, but asked him to read the statement directly to the jury.

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] The defendant, apparently in recognition of the fact that the claim is not constitutional, did not request *Golding* review.

The defendant objected, arguing that the constancy of accusation evidence doctrine did not authorize the admission of a victim's sworn statement to a police officer "after the officer has been allowed to testify orally to the substance of what was told. This is simply piling consistent statement upon consistent statement . . . ." The trial court overruled the objection and allowed Hynes to read the statement to the jury.

We construe the defendant's objection at trial as an objection to both the form and the substance of the victim's written statement. The defendant also claims that his right to confront and cross-examine the victim under the confrontation clause of the sixth amendment to the United States constitution was violated by the trial court's admission of the victim's written statement as constancy of accusation evidence. We address each claim in turn.

A

The defendant first challenges the substance of the victim's sworn statement, asserting that it should not have been admitted as constancy of accusation evidence because it was an unfair "piling on" of the victim's consistent statements. We do not agree.

We begin by noting that the admissibility of evidence under the constancy of accusation doctrine is an evidentiary question that " 'will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' " *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990). The defendant has not demonstrated that the trial court abused its discretion by admitting Hynes' testimony as to the victim's written statement or that he was substantially prejudiced by such testimony.

The defendant appears to argue that the victim's written statement was a mere repetition of Hynes' previous

testimony recalling the victim's account of the assault given at the apartment and, therefore, was improperly admitted as constancy of accusation evidence. "The constancy of accusation doctrine has its origins in common law. Since 1876, statements admitted under the constancy of accusation theory have been labeled by Connecticut courts as exceptions to the hearsay rule, and admitted only as corroborative evidence to strengthen the credit of the principal witness by showing constancy in her declarations." (Internal quotation marks omitted.) *State* v. *Bethea*, 24 Conn. App. 13, 18, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). Prior to our Supreme Court's decision in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc),[8] constancy of accusation evidence was admissible in this state. "So long as the victim has testified to the occurrence of a sexual assault and identified those to whom she has reported the assault, those persons may testify as to the substance of their conversations with the victim regarding the alleged sexual assault. This testimony is admissible for the limited purpose of ascertaining the credibility of the victim's own testimony." *State* v. *Beliveau*, 237 Conn. 576, 593, 678 A.2d 924 (1996).

The victim twice described the assault to Hynes, once at Carmen's apartment and later at the hospital. The defendant argues that the victim's written statement should not have been admitted because Hynes had already testified as to the substance of that statement. On the contrary, Hynes had testified previously only as to the victim's report of the assault as described to him at the apartment. Because Hynes had not related the

---

[8] In *State* v. *Troupe*, supra, 237 Conn. 284, our Supreme Court restricted the doctrine so that a constancy of accusation witness may testify only as to the fact and timing, and not as to the details, of the victim's complaint. Id., 304. The court held, however, that the modification to the rule would operate prospectively. Id., 305. *Troupe* does not affect the present case because it had not been decided as of the defendant's trial. Id.

victim's account of the assault given to him at the hospital, we conclude that the trial court properly admitted the victim's written statement as constancy of accusation evidence.

Moreover, even if we were to consider the admission of the statement improper, the defendant has not established substantial prejudice or injustice. *State* v. *Alvarez*, supra, 216 Conn. 306. " 'It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error.' " *State* v. *Marshall*, 45 Conn. App. 66, 78, 694 A.2d 816, cert. granted on other grounds, 241 Conn. 925, 697 A.2d 361 (1997), quoting *Swenson* v. *Sawoska*, 215 Conn. 148, 155, 575 A.2d 206 (1990). In this case, the victim's written statement was merely cumulative of other constancy of accusation evidence provided by the testimony of the victim's sister, Hynes and Plummer Carroll, a Hartford police officer, and by the admission of the hospital emergency room medical report. In sum, we conclude that the trial court did not abuse its discretion or substantially prejudice the defendant in admitting the victim's written statement.

B

The defendant next challenges the form of the victim's sworn statement, asserting that it should not have been admitted as constancy of accusation evidence because it was written, not tape recorded. We do not agree.

To support his position, the defendant relies on *State* v. *Bethea*, supra, 24 Conn. App. 13, in which this court upheld the admission of a sexual assault victim's tape-recorded police statement as constancy of accusation evidence. The *Bethea* court noted that "[t]here could be no better evidence as to what the victim told [the police detective] than a [tape-recorded] statement in

the victim's own words and voice as to the events that she described to him." Id., 20. Our Supreme Court, in deciding to allow the substantive use of prior signed, written inconsistent statements, has also commented that prior written and tape-recorded statements are often more reliable than a witness' prior oral statements. See *State* v. *Whelan*, 200 Conn. 743, 752–54, 754 n.9, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

In his brief, the defendant asserts that *Bethea* allows the admission of tape-recorded, but not written, statements as constancy of accusation evidence because written statements may contain the victim's "self-serving written account of events in different language." We believe this to be an illogical distinction and one not dictated by *Bethea*. If a victim's tape-recorded statement is admissible because it is more reliable than the police officer's recollection of what the victim said, it follows that a victim's written statement, recorded contemporaneously by the officer, will also be more reliable than the officer's recollection. We conclude, therefore, that the trial court properly admitted the victim's statement as constancy of accusation evidence.

## C

The defendant's third assertion is that the trial court violated his right to confront the victim under the sixth amendment to the constitution of the United States by admitting the victim's written statement as constancy of accusation evidence. We decline to review this portion of the defendant's claim because it was not preserved at trial and is not entitled to review under *State* v. *Golding*, supra, 213 Conn. 239–40.[9] Our Supreme Court has held that claims concerning the admission of constancy of accusation evidence are evidentiary rather than constitutional in nature and therefore do

[9] Again, the defendant did not request *Golding* review of this issue.

not merit *Golding* review. *State* v. *Kelley*, 229 Conn. 557, 564–65, 643 A.2d 854 (1994); *State* v. *DePastino*, 228 Conn. 552, 567–68, 638 A.2d 578 (1994).[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[10] We note that our Supreme Court has specifically rejected the claim that the admission of constancy of accusation evidence violates a defendant's confrontation rights. *State* v. *Troupe*, supra, 237 Conn. 290–93.