## STATE OF CONNECTICUT *v.* KEITH DePASTINO
### (14695)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and SANTANIELLO, Js.

Argued November 2, 1993—decision released February 22, 1994

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *John M. Massameno,* senior assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Keith DePastino, was convicted by a jury of two counts of sexual assault

in the first degree in violation of General Statutes § 53a-70 (a),[1] two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[2] and one count of risk of injury to a child in violation of General Statutes § 53-21.[3] He was sentenced by the trial court to a total effective term of imprisonment of forty years, execution of which was suspended after thirty years with five years probation. The defendant appealed from the judgment of conviction to the Appellate Court pursuant to General Statutes § 54-95 (a),[4] and we transferred the case to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).[5]

On appeal, the defendant claims that the trial court improperly: (1) denied his motion for a new trial based upon the loss of stenographic notes that precluded him from having a complete trial transcript; (2) denied his motion for a new trial based upon a violation of his right

[1] At the time the defendant committed the offense, General Statutes (Rev. to 1985) § 53a-70 (a) provided: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] At the time the defendant committed the offense, General Statutes (Rev. to 1985) § 53a-71 (a) (1) provided in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ."

[3] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[4] General Statutes § 54-95 (a) provides in relevant part: "Any defendant in a criminal prosecution, aggrieved by any decision of the superior court, upon the trial thereof, or by any error apparent upon the record of such prosecution, may be relieved by appeal . . . ."

[5] General Statutes § 51-199 (c) provides in relevant part: "The supreme court may transfer to itself a cause in the appellate court . . . ."

to a speedy appeal; (3) admitted evidence of the defendant's alleged threats to the victims' mother and grandmother as evidence of consciousness of guilt; (4) permitted a constancy of accusation witness to testify before the victim had testified; (5) admitted certain constancy of accusation evidence; (6) admitted the victim's videotaped interview as constancy of accusation evidence; (7) denied his motion for a judgment of acquittal for the offense of sexual assault in the first degree of the younger victim; (8) violated his right against double jeopardy by allowing his convictions for sexual assault in the first and second degree of each victim to stand; and (9) instructed the jury that a reasonable doubt is a doubt for which a valid reason can be assigned. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1985, the defendant resided in an apartment with his girlfriend, her three year old daughter and their eighteen month old daughter. On November 1, 1985, while alone in the apartment with the children, the defendant sexually assaulted the older child. Subsequently, the older child watched the defendant sexually assault the younger child in her crib and make that child cry. Eight days later the defendant struck the older child, bruising her cheek.

When the children's maternal grandmother learned of the physical abuse, she took the older child to live with her. A few days later, the grandmother noticed a vaginal rash on the older child and brought her to a counseling center. During the second visit to the center, through the use of anatomically correct dolls, the child told the director what had happened. The director brought the older child and her grandmother to a pediatrician whose practice included the diagnosis and treatment of child victims of sexual abuse. The doctor also examined the younger child. The doctor concluded

that both children had been sexually abused. An examination of both children by a second physician confirmed the diagnosis.

I

The defendant first claims that the trial court improperly denied his motion for a new trial. His motion was based on the fact that certain stenographic notes of his trial were lost thus preventing him from having a complete trial transcript for appeal. The defendant contends that the unavailability of a complete trial transcript has deprived him of his constitutional right to meaningful appellate review.[6] We disagree.

The absence of the court reporter's notes for the testimony of one of the defendant's witnesses was discovered while the transcript of his trial was being prepared. The trial court conducted a hearing to investigate the extent of the notes that were missing and the effect on the defendant's appeal. At this hearing the court learned that the court reporter had recorded testimony of the witness in question during the trial. When the court examined a copy of the available transcript that had been prepared during the trial, however, it discovered that the transcript was incomplete.[7] Although the transcript included the witness' entire trial testimony, the text of any objections or discussions that had occurred during the testimony had been omitted and replaced with the word "objection" or "discussion."

---

[6] The defendant bases this constitutional claim on General Statutes § 54-95, the statutory provision that provides to defendants the right to appeal, and decisions of the United States Supreme Court holding that any right to appeal provided by statute must be a meaningful review of the proceeding below. See, e.g., *Evitts* v. *Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Griffin* v. *Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956).

[7] The transcript of this witness' testimony had been prepared at the request of an assistant district attorney in California.

The transcript of the witness' testimony is approximately 200 pages in length and contains five objections raised by the state during direct examination, thirteen objections raised by the defendant during cross-examination, and one objection raised by the state during redirect examination. The word "discussion" appears twenty times during cross-examination. The entire trial transcript is approximately 1800 pages in length.

In its memorandum of decision on the defendant's motion for a new trial, the trial court stated that it had conducted a line by line review of the witness' testimony and found the transcript "sufficiently complete" to enable the defendant to pursue his appeal. The court noted that although the transcript does not indicate what transpired during the "discussions," the defendant's trial attorney could recollect nothing unusual happening, and had not made any notations of unusual occurrences. The court also noted that the subject of the objections, and the court's rulings thereon, could be determined with a high degree of probability from a careful reading of the transcript and, therefore, that the transcript was sufficient for an appellate court to "determine if errors were made." Finally, the court noted that the primary purpose of the witness' testimony was to impeach testimony that had been introduced to show constancy of accusation. The available transcript indicated that the witness had been sufficiently allowed to testify for such purpose.

"The absence of a portion of the trial transcript does not mandate a new trial." *State* v. *Williams,* 227 Conn. 101, 105, 629 A.2d 402 (1993). The state is not required to furnish to the defendant a verbatim transcript of the underlying trial. Id. The state must ensure only that the record is adequate for effective appellate review of any claims of error raised by the defendant. Id., 106.

A new trial is required only if the record, as reconstructed, is inadequate for this purpose. Id., 105.

"The sufficiency of a transcript to enable the appellate courts to review the issues on appeal is a matter of fact, because the trial court is in the best position to determine whether the reconstructed record adequately reflects what occurred at the trial. An appellate court should affirm a trial court's finding that the reconstructed record was sufficient unless the appellate court finds that the trial court's determination was 'clearly erroneous.' " Id., 106.

In most cases concerning reconstructed transcripts, the missing portion of the transcript consists primarily of the testimony of witnesses. See, e.g., id., 104–105 (proceedings of one afternoon of trial missing); *Commonwealth* v. *Harris,* 376 Mass. 74, 78–79, 379 N.E.2d 1073 (1978) (entire transcript missing); *People* v. *King,* 160 App. Div. 531, 532, 554 N.Y.S.2d 517, appeal denied, 76 N.Y.2d 847, 559 N.E.2d 1291, 560 N.Y.S.2d 132 (1990) (state's entire case missing). In the present case, however, the testimony given by the witness had been recorded. Only the text of objections and discussions were omitted.

Before a defendant can establish that he is entitled to a new trial on the basis of an incomplete trial record, he must identify a specific claim of error that the appellate court will be unable to review effectively using the reconstructed record. *State* v. *Williams,* supra, 109. The defendant disputes the trial court's conclusion that the witness had been called mainly to impeach the constancy of accusation testimony of the state's witness. He asserts that the witness' testimony was offered to dispute the victim's testimony as well as the testimony of the state's expert witness. The defendant has not, however, identified a claim of error that cannot be reviewed on the basis of the reconstructed record, nor

has he shown that he has been prejudiced in advancing any identified claims of error.

Finally, the defendant claims that, because he is represented on appeal by different counsel, he is unfairly prejudiced by the absence of the portions of the transcript. The defendant's counsel on appeal, however, has been in communication with his trial counsel, and has had the benefit of the trial counsel's recollections of what transpired at trial. The trial counsel has no recollection of any unusual rulings by the trial court, and had made no notes of possible errors to be raised on appeal. Although she was not the trial counsel, the appellate counsel has not been unduly prejudiced by the reconstructed transcript.

We conclude that the trial court's ruling that the reconstructed record was adequate for effective appellate review was not clearly erroneous.

## II

The defendant next claims that the trial court improperly denied his request for a new trial based upon an alleged violation of his right to a speedy appeal. We disagree.

In May, 1989, after the defendant had filed his appeal and ordered a copy of the trial transcript, he learned that the court reporter who had transcribed the defendant's trial was no longer employed by the state and had refused to prepare the transcript at the rate mandated by statute. The state therefore employed a note reader to prepare the transcript. In December, 1990, the court conducted a hearing concerning a missing portion of the transcript and discrepancies between the note reader's transcript and one prepared by the court reporter before she had left the state's employ.

At a subsequent hearing, on August 26, 1991, the court determined that the note reader's transcript was

inadequate for appellate review, and ordered the original court reporter to prepare a complete transcript of the trial by April 6, 1992. When the court reporter had not complied with the court's order by April 14, 1992, the court found the reporter in contempt and ordered her to complete the transcript by June 15, 1992. The court reporter complied with this order of the court.

A criminal defendant does not have a constitutional right to appeal his conviction. *Abney* v. *United States,* 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); *Gaines* v. *Manson,* 194 Conn. 510, 515, 481 A.2d 1084 (1984). Once that right has been established, however, the state must ensure that the right to appeal is not unduly delayed. *State* v. *Files,* 183 Conn. 586, 589, 441 A.2d 27 (1981). In determining whether a defendant's right to a speedy trial has been violated, this court has balanced, on a case by case basis, several factors first identified by the United States Supreme Court in *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *Gaines* v. *Manson,* supra, 521; *State* v. *Files,* supra. The "four factors which form the matrix of the defendant's right to speedy adjudication [are] '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " *State* v. *Files,* supra, quoting *Barker* v. *Wingo,* supra. We apply the same factual matrix to the defendant's claim of a lack of a speedy appeal.

There was approximately a three year delay from the time the defendant filed his appeal until the trial court's denial of his motion for a new trial. The trial court compared the delay in the present case to the delays in *Gaines* v. *Manson,* supra, and concluded that the delay was unacceptable.[8] A three year delay is sufficient to

---

[8] In *Gaines* v. *Manson,* 194 Conn. 510, 521, 481 A.2d 1084 (1984), indigent prisoners had waited from two to four and one-half years before a public defender was made available to work on their appeals.

require the court to proceed to consider the remaining factors in the test. See *State* v. *Files,* supra, 590.

The delay in the present case was caused by the refusal of a court reporter, who was no longer employed by the state, to prepare a transcript at the rate paid to state-employed reporters. We have previously noted that claims for relief for appellate delay caused by delays in the delivery of transcripts must include a showing of actual prejudice when the failures involved were individual rather than systemic. *Gaines* v. *Manson,* supra, 526–27.

The defendant contends that the state has provided an inadequate means to obtain transcripts from court reporters who leave state service and, therefore, that the delay should be characterized as institutional rather than individual. This argument is unpersuasive. The defendant has not shown that his difficulty in obtaining a transcript was anything more than a problem with one uncooperative former court reporter. He has not provided any evidence to demonstrate that this occurrence was part of an institutional practice.

The trial court acknowledged that the defendant had consistently asserted his right to a speedy appeal. The state asserts that it also has diligently pursued a solution to this matter.

The defendant contends that he has been prejudiced by his continued incarceration. He also asserts that he may suffer prejudice in organizing his defense should he be awarded a new trial. The trial court noted that "[a]s far as I can see, there's no prejudice in prosecuting the appeal, once it gets under way." The trial court noted that, because the defendant had been incarcerated for three years while he was unable to prosecute his appeal due to this delay, the defendant's bond should be reduced so that he could be released pending the completion of his appeal as long as he complied with

the conditions of his bond. The defendant's bond was subsequently reduced and he was released pending his appeal.

We conclude that the delay in this case was caused by an individual rather than an institutional failure. The cause of the delay, therefore, does not weigh against the state in the balancing process. The defendant claims that the delay prejudiced him by his continued incarceration. The trial court, recognizing this problem, remedied it by recommending revision on his bond enabling him to be released from custody pending his appeal. The defendant has not demonstrated that he suffered actual prejudice by the delay caused by the incomplete transcript. The trial court, after balancing the factors discussed above, correctly determined that the defendant's right to a speedy appeal was not violated in this case.

### III

The defendant further claims that the trial court improperly allowed the state to introduce, as evidence of consciousness of guilt, threats he had made to his girlfriend. We disagree.

On November 22, 1985, the older child first revealed that she had been sexually assaulted. On November 23, 1985, the defendant entered a restaurant and approached his girlfriend while she was having dinner with friends and threatened his girlfriend and her mother.[9] The defendant argued that the state had not

---

[9] The state made an offer of proof concerning the threats. "The defendant said something to the effect of why are you doing this? You are going to take her side, referring to [the girlfriend's] mother. He asked the witness to go out and so that they could talk about it. She refused and said no. He responded by saying you better watch out, you might end up dead, and your mother better be careful when she starts her car. He began to bang on the table, and finally left."

The girlfriend's testimony was consistent with the state's offer of proof.

established that, at the time he made the threats, the defendant was aware of an investigation into his conduct with the children, and that the prejudicial effect of the testimony outweighed its probative value.

The trial court rejected the defendant's argument and ruled that a fair inference could be drawn from the conversation between the defendant and his girlfriend that he "had knowledge that there was some type of an investigation [in] progress." The trial court also concluded that the prejudicial effect of the threats did not outweigh their probative value.

"In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act. *State* v. *Cronin,* 64 Conn. 293, 304–305, 29 A. 536 [1894]." (Internal quotation marks omitted.) *State* v. *Maturo,* 188 Conn. 591, 597, 452 A.2d 642 (1982). Evidence of threats by the defendant against a witness may be admitted "on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the making of such threats evinces a consciousness of guilt." *State* v. *Walker,* 214 Conn. 122, 129, 571 A.2d 686 (1990). The court must consider whether the probative value of such testimony outweighs its prejudicial effect before admitting consciousness of guilt evidence. *State* v. *Moynahan,* 164 Conn. 560, 596, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

The trial court exercises broad discretion over the admissibility of evidence. In reviewing the actions of the trial court, "every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Woodson,* 227 Conn. 1, 17, 629 A.2d 386 (1993).

After examining the record, we find that it was reasonable for the trial court to conclude that the defendant was aware that a criminal investigation of his behavior either had already begun or would soon commence. The children's grandmother had accused the defendant of child abuse on November 10, 1985, when she removed the older child from his home. Additionally, the defendant's statement that his girlfriend was taking her mother's side indicates that he was aware of a worsening problem concerning his treatment of the children. The threats were highly probative of the defendant's guilt. We conclude that the trial court did not abuse its discretion in admitting testimony concerning the threats made by the defendant as evidence of consciousness of guilt.

## IV

The defendant next claims that the trial court improperly permitted one of the state's witnesses, a physician, to testify regarding the older victim's statement to the physician that the defendant had abused her. Specifically, the defendant claims that the evidence was inadmissible either (a) as constancy of accusation evidence because the victim had not yet testified, or (b) under the medical diagnosis and treatment exception to the hearsay rule.

The state offered the testimony of the physician under the medical diagnosis and treatment exception to the hearsay rule. The physician testified that his pediatric practice includes examining child victims of sexual abuse. As part of the examination he interviews the child to ensure that the child does not remain in a dangerous situation and to enable him to recommend counseling for the child. The physician examined the older child on November 22, 1985, and observed symptoms of sexual abuse including redness and irritation. When

the physician asked her what had happened to her vaginal area, the child told him that "Daddy touched me there."

The defendant objected to the admission of the physician's testimony on the ground that the physician was not the child's treating physician. The trial court ruled, however, that the physician's testimony was admissible under the medical diagnosis and treatment exception to the hearsay rule.

Out-of-court statements made by a patient to a physician may be admitted into evidence if the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving these ends. *State* v. *Wood,* 208 Conn. 125, 134, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). Statements concerning the cause of the injury or the identity of the person who caused the injury usually are not relevant to treatment and, therefore, are not admissible under the medical diagnosis and treatment exception to the hearsay rule. *State* v. *Dollinger,* 20 Conn. App. 530, 534, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990). However, " '[i]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible.' *State* v. *Maldonado,* [13 Conn. App. 368, 374, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988)]. If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries." *State* v. *Dollinger,* supra, 535.

The defendant contends that the physician was not the child's treating physician and, therefore, that her statements to the physician were not motivated by a

desire for treatment. The physician conducted a complete physical examination of the child, asked questions to confirm his diagnosis and to formulate a recommendation for treatment, and conducted a follow-up examination several weeks later. Although the child and her grandmother were brought to the physician by the director of the counseling center, there was sufficient evidence for the trial court reasonably to conclude that the purpose of the visits to the physician was for treatment.[10] The defendant has failed, therefore, to demonstrate that the trial court abused its discretion because the physician's testimony does not fall under the medical diagnosis and treatment exception to the hearsay rule.

The defendant contends, however, that the physician's testimony was intended to show constancy of accusation and, therefore, that the trial court improperly permitted him to testify before the older child had testified. We have consistently held that constancy of accusation testimony is admissible to corroborate the victim's story after the victim has first testified as to what transpired and to whom she related the event. *State* v. *Brice,* 186 Conn. 449, 453, 442 A.2d 906 (1982); *State* v. *Segerberg,* 131 Conn. 546, 548–49, 41 A.2d 101 (1945). Even if we assume that the physician's testimony was admitted to show constancy of accusation and that permitting the physician to testify before the child testified would therefore have been improper, we must determine whether the trial court's arguably

---

[10] The defendant does not claim that there is insufficient evidence in this record from which the trial court could have reasonably concluded that this admittedly very young victim was aware that she was visiting the physician in order to alleviate the symptoms discovered in her vaginal area. Cf. *State* v. *Dollinger,* 20 Conn. App. 530, 536, 568 A.2d 1058 (1990) (two and one-half year old child was aware of discomfort and of need for medical attention); *State* v. *Maldonado,* 13 Conn. App. 368, 372, 530 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988) (three year old was aware that she needed medical attention).

improper ruling "was so prejudicial to the rights of the defendant as to deprive him of a fair trial, and so, to constitute harmful error." *State* v. *Ruth,* 181 Conn. 187, 196, 435 A.2d 3 (1980).

The physician began his testimony and discussed his examination of and conversation with the older child before she testified. During his direct examination, he was called away by an emergency. Following the older child's testimony, the physician completed his testimony. The conclusion of the direct examination of the physician, and his entire cross-examination, therefore, followed the child's testimony.

Because the defendant's cross-examination of the physician occurred after the child had testified, he was able to question the physician concerning any possible discrepancies between the older victim's testimony at trial and the physician's recollection of what she had told him. We conclude that the rights of the defendant were not prejudiced by the events at the trial. Any impropriety caused by permitting the physician to begin testifying before the older child had testified, therefore, was harmless.

V

The defendant further contends that the trial court violated his state and federal rights to confrontation and a fair trial by admitting the testimony of five constancy of accusation witnesses. The defendant concedes that he did not preserve this claim at trial. He seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[11]

---

[11] The four conditions that must be satisfied before a defendant may prevail on an unpreserved claim of constitutional error are: (1) the record must be adequate to review the claim; (2) the claim must be of constitutional dimension, alleging the violation of a fundamental right; (3) the alleged constitutional violation must clearly exist and must have deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state

The constancy of accusation rule "is an evidentiary rule of long standing in this jurisdiction." *State* v. *Dabkowski,* 199 Conn. 193, 199, 506 A.2d 118 (1986). Although the hearsay rule and the confrontation clause are intended to protect similar rights, the confrontation clause is not merely a codification of the hearsay rule. *State* v. *Brigandi,* 186 Conn. 521, 531–32, 442 A.2d 927 (1982). In the present case, the defendant was able to cross-examine the older child as well as each constancy of accusation witness to test their credibility. We find no violation of the defendant's right to confrontation. Because this claim fails the second prong of the test set forth in *State* v. *Golding,* supra, we decline to review it further. We have consistently denied review of the same unpreserved claim that the defendant attempts to raise here. See, e.g., *State* v. *Tillman,* 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); *State* v. *Allen,* 216 Conn. 367, 385, 579 A.2d 1066 (1990); *State* v. *Rogers,* 199 Conn. 453, 462, 508 A.2d 11 (1986); *State* v. *Brigandi,* supra, 531–32; *State* v. *Brice,* 186 Conn. 449, 458, 442 A.2d 906 (1982).

## VI

The defendant next claims that the trial court improperly admitted a videotaped interview of the older child as constancy of accusation evidence. We disagree.

During the testimony of a social worker assigned to investigate the case by the department of children and youth services, the state offered as constancy of accusation evidence a videotaped interview that the social worker had conducted with the older child. The interview had been videotaped for use by the police in their investigation so that the police would not have to inter-

---

must have failed to demonstrate harmlessness beyond a reasonable doubt. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

view the child a second time. Statements made by the older child to the social worker at earlier unrecorded interviews were also introduced as constancy of accusation evidence. The trial court overruled the defendant's objection to the introduction of the videotaped interview.

The Appellate Court has previously rejected a similar claim that the admission of a tape-recorded statement of the victim is inadmissible as constancy of accusation evidence. *State* v. *Bethea,* 24 Conn. App. 13, 20–21, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). The defendant contends that the circumstances of this case should be distinguished because the videotape was prepared for use by the prosecution. We disagree. The facts in this case are indistinguishable from those in *State* v. *Bethea,* supra, where the victim gave a tape-recorded statement to the police. Furthermore, the defendant had the opportunity to cross-examine the older child about her accusations as well as the social worker about the circumstances under which the child's statement was recorded. In sum, we agree with the reasoning of the Appellate Court in *State* v. *Bethea,* supra, on this issue.

Other jurisdictions have also admitted videotaped statements of sexual assault victims as constancy of accusation evidence. See, e.g., *Commonwealth* v. *Lavalley,* 410 Mass. 641, 574 N.E.2d 1000 (1991); *State* v. *Robinson,* 782 S.W.2d 694 (Mo. App. 1989). We can perceive no difference between tape-recorded and videotaped statements for evidentiary purposes. The trial court, therefore, properly admitted the videotaped statement.

## VII

The defendant next argues that the trial court improperly denied his motion for acquittal for the offense of sexual assault in the first degree of the

younger child. He asserts that "the state failed to prove the requisite elements of compulsion, and that the use or threat of use of force reasonably caused [the younger child] to fear physical injury." We disagree.

"[W]e have 'consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction.' " *State* v. *Salz,* 226 Conn. 20, 31, 627 A.2d 862 (1993). " 'First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.' " Id. That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. *State* v. *Carpenter,* 214 Conn. 77, 79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).

General Statutes § 53a-70 (a) in pertinent part defines sexual assault as compelling "another person to engage in sexual intercourse by the use of force against such other person . . . ." General Statutes § 53a-65 (7) includes within the definition of the term "use of force" "use of actual physical force or violence or superior physical strength against the victim." The state contends that in light of this statutory definition, it could meet its burden of proof that the defendant had committed sexual assault in the first degree against the younger child by producing evidence that he had used superior physical strength to compel her to engage in sexual intercourse.

The state presented evidence that the older child saw the defendant pull down the side of the younger child's crib and insert his penis into her vagina. The younger

child cried during the sexual assault. A physician testified that the younger child's vaginal area was red, swollen and bruised. He also testified that the insertion of any object into the younger child's vagina would have been extremely painful. Considering the relative size difference between the defendant and his eighteen month old daughter, the injuries to her vaginal area, the fact that she was crying during the assault and the testimony of the physician that the assault would have been very painful to the child, the jury from the evidence reasonably could have concluded beyond a reasonable doubt that the defendant compelled the younger child to engage in sexual intercourse by using superior physical strength.

We conclude that the trial court properly denied the defendant's motion for acquittal on the charge of sexual assault in the first degree of the younger child.

## VIII

The defendant also claims that his convictions for sexual assault in the first degree and second degree for each victim violate his right against double jeopardy under the state and federal constitutions.

The defendant has not provided a separate analysis under state constitutional law. Accordingly, we will apply only the traditional federal constitutional analysis to his claim. See, e.g., *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991).

Double jeopardy prohibits multiple punishments for the same offense. *State* v. *Snook,* 210 Conn. 244, 260, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple

punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) Id., 264. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision required proof of a fact which the other does not." (Internal quotation marks omitted.) Id; see also *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

The Appellate Court, on two prior occasions, has rejected identical claims. See *State* v. *Russell,* 25 Conn. App. 243, 248–52, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991); *State* v. *Blackwell,* 20 Conn. App. 193, 195–98, 565 A.2d 549, cert. denied, 213 Conn. 810, 568 A.2d 794 (1989). In this case, each statute requires proof of a fact that the other does not. To be convicted of sexual assault in the second degree, the defendant must have had sexual intercourse with a person under the age of fifteen. Sexual assault in the first degree, however, is intended to protect all persons, without age limitation, from compelled sexual assault. *State* v. *Russell,* supra, 251. Additionally the legislative history of these statutes does not indicate that the legislature intended that these two statutes "be classified as two nominally distinct crimes for which only one punishment could be imposed." Id. The defendant has offered no reasoned analysis to persuade us that we should now overrule *Russell* and *Blackwell* and we decline to do so. Accordingly, this claim is without merit.

IX

Finally, the defendant claims that the trial court improperly defined a reasonable doubt as "a doubt for which a valid reason can be assigned." Because this

claim was not preserved at the trial, the defendant seeks review under the procedure set forth in *State* v. *Golding,* supra.

We have repeatedly held that this exact instruction is not constitutionally defective. See *State* v. *Gomez,* 225 Conn. 347, 353, 622 A.2d 1014 (1993), and the cases cited therein. This claim, therefore, does not satisfy the third prong of the *Golding* test. Accordingly, we will not review it.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and BOR-DEN, Js., concurred.

BERDON, J., dissenting. The constancy of accusation rule, as applied in Connecticut, raises serious constitutional questions under the state and federal rights to confrontation. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.22.1. I would reach this important issue.

The court fails to analyze the issue, stating that the second prong of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), has not been met. This prong requires that the claim be "of constitutional magnitude alleging the violation of a fundamental right . . . ." Id., 239. Of course, the right of the defendant to confront witnesses against him is a fundamental right under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut.

Accordingly, I respectfully dissent.