STATE OF CONNECTICUT *v.* JULIUS MARSHALL
(SC 15717)

Callahan, C. J., and Norcott, Katz, Palmer and Peters, Js.

Argued April 22—officially released September 8, 1998

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *John M. Massameno*, senior assistant state's attorney, and *David Scannell*, legal intern, for the appellee (state).

*Opinion*

PALMER, J. After a jury trial, the defendant, Julius Marshall, was convicted of two counts of sexual assault in the first degree in violation of General Statutes (Rev. to 1991) § 53a-70 (a) (2),[1] and two counts of risk of

[1] General Statutes (Rev. to 1991) § 53a-70 provides in relevant part: "Sexual assault in the first degree: Class B felony: One year not suspendable. (a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

Hereafter, all references to § 53a-70 are to the 1991 revision.

injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[2] The trial court rendered judgment in accordance with the guilty verdict,[3] and the defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed his convictions. *State v. Marshall*, 45 Conn. App. 66, 694 A.2d 816 (1997).

We granted the defendant's petition for certification limited to the following issue: "Whether the Appellate Court properly held that the trial court's admission of the two videotapes of the accusing child witness and the testimony of the six other witnesses as constancy of accusation evidence was proper?" *State v. Marshall*, 241 Conn. 925, 697 A.2d 361 (1997). We conclude that the admission of the two videotapes constituted harmful error and, accordingly, we reverse the judgment of the Appellate Court.[4]

The relevant factual and procedural history is undisputed. The defendant was charged with first degree sexual assault and risk of injury to a child after an investigation indicated that the defendant had engaged in sexual acts with his daughter (victim), between August, 1991, and September, 1992, at the family home in Bloomfield.[5] The victim was two and one-half years

---

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured or its morals are likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

Public Acts 1995, No. 95-142, § 1, incorporated amendments to § 53-21 that are not relevant to this appeal. Hereafter, all references to § 53-21 are to the 1991 revision.

[3] The trial court sentenced the defendant to a total effective term of imprisonment of eighteen years.

[4] Consequently, we do not consider the defendant's claim regarding the introduction into evidence of the testimony of the six other constancy of accusation witnesses.

[5] The first count of the four count information alleged that the defendant had performed cunnilingus on the victim sometime between August, 1991,

old at the time she first made the allegations of sexual abuse that ultimately led to the charges against the defendant. At the time of trial, the victim was approximately four and one-half years old.

Prior to trial, the state moved for permission to allow the victim to testify by videotape and out of the presence of the defendant in accordance with the principles enunciated by this court in *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).[6] In support of its motion, the state introduced the testimony of Bruce Freedman, a clinical psychologist, who indicated that the victim's testimony would be "absolutely unreliable" if she were required to testify in the courtroom in the presence of the defendant. In opposition to the motion, the defendant elicited testimony from the victim's mother, who expressed the opinion that her daughter would not be intimidated by the defendant and that

---

and September, 1992, in violation of § 53a-70 (a) (2). The second count, which alleged the same conduct as the first count, charged the defendant with violating § 53-21. The third count of the information alleged that the defendant had violated § 53a-70 (a) (2) by placing his finger into the victim's vagina or anus sometime between August, 1991, and September, 1992. The fourth count, which alleged the same conduct as the third count, charged the defendant with having violated § 53-21.

[6] In *State* v. *Jarzbek*, supra, 204 Conn. 683, we concluded that, "in criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the [trial] testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. . . . [A] trial court must balance [in a case-by-case analysis] the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question. . . . [The] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . [T]he state bears the burden of proving such compelling need by clear and convincing evidence." (Citation omitted.) Id., 704–705.

she never had exhibited any sign of being fearful of the defendant. The trial court granted the state's *Jarzbek* motion and allowed the victim to testify on videotape, outside of the defendant's presence, subject to full cross-examination by the defendant's attorney. The defendant was allowed to view the child's testimony on a television monitor in an adjoining courtroom.[7]

On Friday, September 16, 1994, while the parties and the court were setting the parameters for the victim's videotaped trial testimony, the senior assistant state's attorney assigned to try the case for the state notified the court that he had conducted two videotaped interviews of the victim, one on August 18, 1994, and a second one on September 2, 1994, in preparation for trial. The state also informed the court that it intended to use these two videotapes[8] to refresh the victim's recollection, if necessary, and, in addition, that it would offer the videotapes as substantive evidence under *State v. Whelan*, 200 Conn. 743, 754 n.9, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986) (prior inconsistent statements admissible for substantive purposes if adequate indicia of reliability present), in the event that the victim's testimony was inconsistent with her *Jarzbek* testimony.

After the parameters for the videotaping of the victim's *Jarzbek* testimony had been established, she testified, in pertinent part, that her father had touched her on her buttocks with his tongue and with his hand and that this had occurred downstairs in her parents' house. Initially, she denied that her father had touched any

---

[7] On appeal to the Appellate Court, the defendant challenged the decision of the trial court allowing the victim to testify under *Jarzbek*. The Appellate Court rejected the defendant's claim. *State v. Marshall*, supra, 45 Conn. App. 70–72. That issue was not certified for review by this court.

[8] In order to distinguish the victim's videotaped trial testimony from the two videotaped interviews conducted by the senior assistant state's attorney shortly before trial, we refer to the former as the victim's *Jarzbek* testimony.

other private part of her body. In an effort to refresh her recollection, the state showed her one of the videotaped interviews that had been conducted in preparation for trial. In that interview, the victim had indicated that her father had touched her vaginal area. After viewing the videotape, the victim acknowledged that the defendant had, in fact, touched her vaginal area.

On cross-examination, the victim denied that she had ever been alone with the defendant or that he had ever touched her. On redirect, the victim stated that she had told the truth when she testified that her father had touched her with his hand and with his tongue on a private part of her body and that it was hard to talk about the incident. On recross, the victim stated that she had not told the truth when she stated during her cross-examination that her father had not touched her. When defense counsel asked her what *was* true, she replied, "I don't know."

The state introduced into evidence, without objection, diagrams of the posterior of a female figure and the front of a male figure that the victim had marked during the course of her *Jarzbek* testimony to describe the alleged sexual conduct by her father. The state also introduced into evidence, without objection, two diagrams that the victim had marked during her August 18 interview, which also were used during her *Jarzbek* testimony to refresh her recollection.

The state then sought to introduce portions of the videotape of the victim's August 18 interview as substantive evidence under *State* v. *Whelan,* supra, 200 Conn. 743. The trial court rejected the state's claim of admissibility under *Whelan,* stating that the victim had been allowed to view the videotape during her *Jarzbek* testimony only for the purpose of refreshing her recollection.

When the court next convened on September 19, 1994, and shortly before the videotape of the victim's *Jarzbek* testimony was to be played for the jury, the defendant moved to preclude the jury from viewing that portion of the videotape of the *Jarzbek* testimony during which she had watched the videotape of her August 18 interview for the purpose of refreshing her recollection. The contents of the videotape of the August 18 interview were visible and audible on the videotape containing the victim's *Jarzbek* testimony. The state objected, asserting that the videotape of the August 18 interview would be "clearly admissible" under the constancy of accusation doctrine. The court granted the defendant's motion, reiterating that the videotape of the August 18 interview had been allowed only to refresh the victim's recollection. The court ordered that when the videotape of the victim's *Jarzbek* testimony reached the point at which the videotape of the August 18 interview would be visible and audible, the sound would be turned off and the monitor would be turned away from the jury so that the jurors would not see or hear the August 18 interview. The videotape of the victim's *Jarzbek* testimony then was played for the jury in accordance with the trial court's ruling.

After the state had adduced constancy of accusation testimony[9] from Abioseh Cole, a pastor and family counselor, and Deborah Espittia, a social worker with the

---

[9] "The constancy of accusation doctrine is well established in Connecticut and recently has been reaffirmed by this court. See *State* v. *Troupe*, 237 Conn. 284, 297–98, 303–304, 677 A.2d 917 (1996); *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994); *State* v. *Dabkowski*, 199 Conn. 193, 199–203, 506 A.2d 118 (1986). The doctrine originally was premised on the arguably inaccurate premise that, if a woman had been sexually assaulted, it would be 'natural' for her to confide in others. See, e.g., *State* v. *De Wolf*, 8 Conn. 93, 99 (1830). Until *State* v. *Troupe*, supra, 304, we permitted witnesses to testify about the details of a victim's accounts of the alleged sexual assault on the theory that, if the victim's story were true, 'the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear.' *State* v. *Kinney*, 44 Conn. 153, 156–57 (1876); *State* v. *De*

state department of children and families, the state presented the testimony of Delrosa DelSol, the victim's maternal grandmother. During DelSol's testimony, the state offered, as full exhibits, the videotapes of the August 18, 1994 and September 2, 1994 interviews[10] as constancy of accusation evidence. The defendant objected to the admissibility of both videotapes, asserting that the victim's statements, made two years after the crimes allegedly were committed and during prearranged interviews with the senior assistant state's attorney assigned to the case, and shortly before and in preparation for trial, were not admissible under the constancy of accusation doctrine. The trial court overruled the defendant's objections and allowed both tapes to be played for the jury.

After DelSol's testimony, the state adduced additional constancy of accusation testimony from Detective Peter Crombie of the Bloomfield police department, Anne Flanagan, a social worker at the Village for Families and Children, and Freedman, the clinical psychologist.[11]

*Wolf,* supra, 99. In *State* v. *Troupe,* supra, 284, however, we restricted the doctrine so that a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony, and not for substantive purposes. Id., 304." *State* v. *Sullivan,* 244 Conn. 640, 645, 712 A.2d 919 (1998). We also noted in *Troupe* that "the defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details." *State* v. *Troupe,* supra, 304 n.19. The present case was tried before the release of our decision in *Troupe,* the holding of which is applicable "only to those cases in which constancy of accusation testimony [had] not yet been admitted into evidence on the date of the publication of [the *Troupe*] opinion." Id., 305.

[10] DelSol had accompanied the victim to these interviews.

[11] The state's case also included testimony from several other witnesses, including Frederick Berrien, a physician and expert on child sexual abuse, who had examined the victim. On the basis of Berrien's testimony regarding

At the conclusion of the state's case, the defendant testified in his own behalf,[12] and also presented the testimony of his wife and three character witnesses. The jury found the defendant guilty as charged.

On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court should not have permitted the state to introduce into evidence, under the constancy of accusation doctrine, the two video-taped interviews of the victim conducted by the senior assistant state's attorney. The defendant claimed that both the temporal proximity of the interviews to the trial and the fact that the interviews had been conducted by the state in preparation for trial precluded the state's use of the videotaped interviews as constancy of accusation evidence. The Appellate Court rejected the defendant's claims, concluding that: (1) the timing of the statements was a matter for the jury to weigh; and (2) videotaped interviews of victims are proper constancy of accusation evidence. *State* v. *Marshall*, supra, 45 Conn. App. 74–75.

Although we agree that the timing of constancy of accusation statements generally is a matter for the jury to consider in evaluating the evidence; see *State* v. *Parris*, 219 Conn. 283, 292, 592 A.2d 943 (1991); we do not agree that a videotaped interview conducted by the senior assistant state's attorney for the purpose of preparing a sexual assault victim for trial is admissible under the constancy of accusation doctrine. Because we also conclude that this error was harmful, we reverse the judgment of the Appellate Court.

In modifying our constancy of accusation doctrine in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996),

---

the condition of the victim's vaginal area, the jury reasonably could have concluded that the victim had been sexually abused.

[12] Although the defendant denied any sexual contact with the victim, he did not contest the fact that she had been sexually abused.

to limit such evidence to the fact and the timing of the complaint; see footnote 9 of this opinion; we reviewed the history of the doctrine, "which traces its roots to the 'fresh complaint' rule." Id., 294. "This court expressly adopted the fresh complaint doctrine in *State* v. *De Wolf*, 8 Conn. 93, 100 (1830), in which we stated that 'on an indictment for rape . . . such evidence is received to shew *constancy* in the declarations of the witness. If a female testifies, that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her female friends.' . . . Forty-six years later, in *State* v. *Kinney*, 44 Conn. 153 (1876), we expanded the rule to permit the state to introduce testimony concerning the details of the complaint. We explained our reason for doing so as follows: 'Why has the rule been adopted that in prosecutions for rape . . . the public prosecutor may show that the woman on whom the assault was made complained of it to her friends? It is simply because such a course would be natural if the crime had been committed, but very unnatural if it had not been. But her natural impulses would prompt her to tell all the details of the transaction. Why, on the same principle, ought not her statement of the details to be evidence? If her story were untrue, the greater would be the opportunity for detection, and the accused would be helped in his defense. If her story were true, the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear.' Id., 156–57. This extension of the fresh complaint rule became known as the constancy of accusation doctrine." (Emphasis in original.) *State* v. *Troupe*, supra, 297.

Before modifying the doctrine in *Troupe*, we allowed "the state to introduce the fact . . . and . . . details of the complaint once the victim [had] testified regarding the alleged sexual assault and the identity of the person or persons to whom a complaint had been

made." Id. Such evidence was admitted not for substantive purposes, but only to corroborate the trial testimony of the victim. See id., 304. The admissibility of the constancy evidence also was "[s]ubject to a determination by the trial court that the proffered evidence [was] more probative than prejudicial . . . ." Id., 297–98. Additionally, "the complaint need not have been made promptly after the commission of the alleged offense; any delay in reporting [was] to be considered by the fact finder in evaluating the weight of the constancy of accusation testimony." Id., 298; see *State* v. *Parris*, supra, 219 Conn. 291 ("[w]hatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it" [internal quotation marks omitted]); *State* v. *Brigandi*, 186 Conn. 521, 529, 442 A.2d 927 (1982) (same). Within these bounds, many types of witnesses, including police officers, have been allowed to provide constancy of accusation evidence. See, e.g., *State* v. *Kish*, 186 Conn. 757, 769, 443 A.2d 1274 (1982) (constancy testimony by neighbor, doctor and police officers); *State* v. *Brigandi*, supra, 525, 528 (constancy testimony by police officers, mother-in-law and social worker); *State* v. *Greene*, 161 Conn. 291, 294, 287 A.2d 386 (1971) (constancy testimony by mother, grandmother, sister-in-law and teacher); *State* v. *Zoravali*, 34 Conn. App. 428, 430 n.3, 440, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994) (constancy testimony by police officers, social workers and nurse).

We agree with the state that the mere fact that a sexual assault victim does not report the assault until some period of time after its occurrence does not, by itself, render the victim's report inadmissible under the constancy of accusation doctrine. See, e.g., *State* v. *Parris*, supra, 219 Conn. 291. From its inception, the

underlying purpose of the doctrine has been to combat prejudiced notions about the credibility of sexual assault victims by allowing the state to demonstrate that the victim had reported the assault to persons in whom she naturally would confide. *State* v. *Kinney*, supra, 44 Conn. 156. Thus, although the doctrine allows the state to use prior statements by a sexual assault victim "to protect against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident"; *State* v. *Troupe*, supra, 237 Conn. 303; we never have extended the scope of the doctrine to include statements given by the victim to a prosecutor in preparation for trial. To do so would allow the state to create evidence on the eve of trial for the purpose of bolstering the victim's credibility.

The state relies heavily on our decision in *State* v. *DePastino*, 228 Conn. 552, 638 A.2d 578 (1994), to support its contention that the two videotaped interviews were properly introduced into evidence under the constancy of accusation doctrine. In *DePastino*, we concluded that the trial court did not abuse its discretion by allowing the state to admit, as constancy of accusation evidence, a videotaped interview of a child sexual assault victim conducted by a social worker assigned to investigate the case by the department of children and youth services, now the department of children and families.[13] Id., 568–69. Adopting the reasoning of *State* v. *Bethea*, 24 Conn. App. 13, 20–21, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991) (tape-recorded statements given to police on night of sexual assault admitted as constancy of accusation evidence), we concluded that videotaped interviews of sexual assault victims properly may be admitted as constancy

---

[13] The social worker's interview of the victim was videotaped so that the police would not have to interview the victim a second time. *State* v. *DePastino*, supra, 228 Conn. 568–69.

of accusation evidence. *State* v. *DePastino*, supra, 568–69. Contrary to the state's assertion, however, an interview of a sexual assault victim conducted by a representative of an agency responsible both for investigating the assault and for assisting and counseling the victim—and in whom the victim therefore is likely to confide—is entirely different from a pretrial interview conducted by a prosecutor for the purpose of preparing the victim for trial.

The use of evidence created by the state in preparation for trial does not further the goal of the constancy of accusation doctrine, namely, to combat the biases that certain jurors may have regarding the credibility of those who allege that they have been the victim of a sexual assault. Although we have allowed juries to consider the testimony of people, such as police officers, social workers, friends, family members and co-workers, to whom the victim has related his or her allegations, so that the jury may fairly assess the credibility of the victim's trial testimony, we have allowed this evidence on the theory that complaints to such persons "would be natural if the crime had been committed, but very unnatural if it had not been." *State* v. *Kinney*, supra, 44 Conn. 156.

This rationale is inapplicable to the pretrial interviews conducted by the senior assistant state's attorney in this case. These interviews occurred long after the victim had come forward with her allegations, long after the police had completed their investigation of the offenses and long after the state had formally charged the defendant with the crimes. Moreover, the interviews were initiated not by the victim, but by the state, on the eve of trial, solely for the purpose of assisting the state in its preparation for trial. Were we to accept the state's claim of admissibility, the state, as a routine matter, would be able to arrange a series of videotaped interviews with a sexual assault victim shortly before

trial, ask the victim to repeat her story at each interview, and offer the videotapes into evidence to artificially enhance the victim's credibility. We never have allowed the use of such evidence under the constancy of accusation doctrine, and we are unwilling to sanction its use for that purpose today. Quite simply, the state's argument in support of the admissibility of the two videotaped interviews stretches the constancy of accusation doctrine beyond its breaking point.

We turn next to the question of whether the admission of the videotapes constituted harmful error entitling the defendant to a new trial. When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. As we recently have noted, "we have not been fully consistent in our articulation of the standard for establishing harm." *State* v. *Shabazz*, 246 Conn. 746, 759, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). "One line of cases states that the defendant must establish 'that it is more probable than not that the erroneous action of the court affected the result.' . . . *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997); *State* v. *Wilkes*, 236 Conn. 176, 188, 671 A.2d 1296 (1996); *State* v. *Cavell*, 235 Conn. 711, 721–22, 670 A.2d 261 (1996)." *State* v. *Shabazz*, supra, 759. A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict. See, e.g., *State* v. *Askew*, 245 Conn. 351, 371–72, 716 A.2d 36 (1998). We need not choose between these two formulations, nor need we decide whether there is any functional difference between them, because we conclude that, in the present case, the defendant has satisfied his burden under either formulation.

In her *Jarzbek* testimony, the victim indicated on direct examination that the defendant had touched her on her buttocks with his tongue and with his hand. She

testified that it had felt bad and that she did not like it. She also testified that this contact had taken place downstairs in her parents' house but that she did not know in which room it had occurred. When the victim was asked whether the defendant had touched her anywhere on her front, the victim said no. When the victim was shown anatomical diagrams of the front of a young girl that she previously had marked during one of her interviews to indicate where the defendant had touched her, she stated that she did not remember why she had made those markings. After the victim was shown the videotape of the August 18 interview to refresh her recollection, however, she indicated that her father also had touched her on her front.

On cross-examination, the victim denied that she had ever heard of the word "chim-chim," a term several of the state's constancy of accusation witnesses testified that the victim had used when referring to her vagina in connection with her complaints about the defendant. The victim also testified that she did not know why she had marked the diagram of the young girl's buttocks. When asked whether she had ever been licked by a cat, the victim responded that she had.[14] When asked whether she liked it, she responded that she did not. When asked whether she was ever alone with her father, she responded that she was not. When asked whether her father had ever touched her, she stated that he had not.[15]

Unlike her *Jarzbek* testimony, the victim's statements during her two videotaped interviews with the senior

---

[14] The victim's mother testified that when the victim originally made the allegations about the defendant licking her, the victim also had referred to a cat. In addition, Freedman, the clinical psychologist who had interviewed the victim, testified that she originally told him that the cat, rather than the defendant, had hurt her bottom. Upon further questioning by Freedman, the victim indicated that it had been the defendant who had licked her bottom.

[15] As we indicated earlier in this opinion, however, the victim's testimony on redirect examination tended to reaffirm her testimony on direct examination, which served to inculpate the defendant.

assistant state's attorney were much more definitive and provided more compelling evidence of the defendant's guilt. Although those statements contained some inconsistencies, the victim made it clear in both of the interviews that the defendant had touched her in more than one private place. In neither interview did the victim waver on whether any improper touching had taken place. In the August 18 interview, she stated that her father had touched her with his finger in a private place while at their house, that she did not like it, and that it had made her very mad. In the September 2 interview, the victim indicated that the defendant had touched her on her buttocks with his tongue and that she did not like it. She then indicated that she did not want to talk about the subject any more. The interview ceased shortly thereafter.

In light of the foregoing, we are persuaded that it is likely that the improper introduction into evidence of the two videotaped interviews caused the defendant substantial prejudice and probably affected the verdict. The principal evidence inculpating the defendant was the victim's *Jarzbek* testimony,[16] during which she wavered on when and what had occurred, even in response to leading questions, and seemed to tailor her answers to please the party asking the questions. Although, as we have indicated, the victim reaffirmed on redirect examination certain inculpatory testimony that the state had elicited from her on direct examination, her version of the facts was materially different on cross-examination, during which she exculpated the defendant. Thus, the victim's credibility was on less than solid ground. Moreover, even assuming that the

---

[16] The testimony of the six constancy of accusation witnesses was admitted only to corroborate the victim's *Jarzbek* testimony and not for substantive purposes. See *State* v. *Troupe*, supra, 237 Conn. 304. Moreover, although each of the six witnesses testified that the victim had reported inappropriate sexual contact by the defendant, the victim's reports were not uniform.

testimony of each of the six other constancy witnesses was properly admitted to corroborate the victim's *Jarzbek* testimony, we believe that allowing the jury to see and hear the victim relate her story to the senior assistant state's attorney two additional times immediately before trial, and without the opportunity for cross-examination, created a grave risk of prejudice to the defendant. See *State* v. *Gould*, 241 Conn. 1, 14, 695 A.2d 1022 (1997) (noting that videotaped testimony of child victims of sexual abuse may "engender . . . passion, animation or sympathy"). Accordingly, we are persuaded that the defendant has met his burden of showing harmful error, thereby entitling him to a new trial.[17]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial.

In this opinion the other justices concurred.

---

[17] At the new trial, the limitation on the constancy of accusation doctrine that we adopted in *State* v. *Troupe*, supra, 237 Conn. 304, will be applicable. See id., 305; see also footnote 9 of this opinion.