STATE OF CONNECTICUT *v.* LEE VRNE KELLEY
(14560)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and SANTANIELLO, Js.

Argued November 2, 1993—decision released May 18, 1994*

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Lee Vrne Kelley, was found guilty by a jury of one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[1] one count of first degree sexual

---

* May 18, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person

assault in violation of General Statutes § 53a-70 (a) (1),[2] and one count of third degree sexual assault in violation of General Statutes § 53a-72a (a) (2).[3] He was sentenced by the trial court to a term of imprisonment of eighteen years. The defendant has appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).[4] He claims in his appeal that the trial court improperly: (1) precluded him from questioning the victim regarding a previous false accusation of sexual assault in violation of his right to confrontation; (2) admitted constancy of accusation evidence concerning the sexual assault; (3) admitted the victim's tape-recorded statement as constancy of accusation evidence; (4) defined reasonable doubt in the charge to the jury as "a doubt for which a valid reason can be assigned," thereby diluting the state's burden of proof; and (5) charged the jury on first degree sexual assault in such a way as to allow the jury to convict him on a statutory alternative that was not supported by the evidence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 18, 1990, the victim, a seventeen year

and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person . . . ."

[3] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

[4] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

old female, lived in New Haven with her mother and siblings. During the morning on that date, the defendant, the victim's uncle, came to the victim's home and asked that she go with him to tell his wife that he had been at the victim's home the previous night. The victim agreed. Consequently, at approximately noon, they left the victim's home to walk to the defendant's apartment. The victim took a shortcut and arrived at the defendant's third floor apartment before he did. When no one answered the door, she went downstairs to the first floor. The defendant appeared behind the victim in the first floor hallway and told her that the keys to his apartment were in the basement. When the victim told the defendant that she did not want to go down into the basement, he pulled her arms behind her and forced her toward the basement door. The defendant was holding a screwdriver in his hand. Although the door was usually locked, the lock had been broken. The victim, afraid and crying, asked the defendant what he was doing and begged him not to take her to the basement. Believing that no one was nearby, the victim did not call out or attempt to attract attention.

Once in the basement, the defendant pushed the victim away from the stairs toward a darkened portion of the basement where he forced her down onto the dirt and rock floor. The defendant pinned the victim down and ordered her to remove her clothes and had intercourse with her. Subsequently, he ordered the victim to get dressed, and threatened to tie her up if she continued crying and screaming. The victim, in order to get away from the defendant, assured him that she would tell no one of the assault. The defendant released her.

When released, however, the victim ran home and informed her mother of what had occurred. Thereafter, in response to a call about an alleged sexual assault, New Haven police officers arrived at the victim's home

and found her rolling on the floor in "hysterics" and unable to answer questions. After being taken to the hospital by ambulance, she still could not respond to questions but did indicate that she would like to speak to a psychiatrist. Nonetheless, at the hospital, she was not fully responsive to the psychiatrist, an examining physician or a police detective. Although she answered some questions, she did not provide details of the assault. On the day of the incident, after she was discharged from the hospital, however, the victim did permit the police to record her statement. Approximately two months later, the victim also related the details of her encounter with the defendant to a nurse practitioner.

I

The defendant first argues that the trial court improperly precluded him from questioning the victim about what he contends was a previous false accusation of sexual assault. He asserts that the purpose of cross-examining the victim regarding a previous complaint that did not result in a prosecution was "to show that [the victim] has no hesitancy in making complaints of sexual assault . . . ." The defendant claims that the court's ruling deprived the jury of information necessary for it to determine the victim's credibility and improperly curtailed his cross-examination of the victim.[5] We disagree.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest served by confrontation is the right to cross-examination . . . and an

---

[5] The defendant's claim is based on the sixth amendment to the United States constitution. He presents no independent analysis of the state constitution. *State* v. *Robinson,* 227 Conn. 711, 721, 631 A.2d 288 (1993); *State* v. *Johnson,* 227 Conn. 611, 614, 630 A.2d 69 (1993).

important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton,* 227 Conn. 231, 248–49, 630 A.2d 577 (1993).

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." *State* v. *Johnson,* 21 Conn. App. 291, 293, 573 A.2d 1218 (1990). Only relevant evidence may be elicited through cross-examination. *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 479 (1980). The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence "renders the existence of [other facts] either certain or more probable." (Internal quotation marks omitted.) *State* v. *Kelly,* 208 Conn. 365, 376, 545 A.2d 1048 (1988).

In *Kelly,* we held that the fact that a man whom the victim had previously accused of sexual assault had been acquitted had no probative value in a subsequent sexual assault case against a different defendant. Id. We stated that the acquittal did "not make the charge of sexual assault against [the earlier defendant] or the charge against the defendant a 'recent contrivance,' 'imagination,' or 'sexual fantasy. . . .' " Id., 377.

On the other hand, in *State* v. *Ouellette,* 190 Conn. 84, 459 A.2d 1005 (1983), the victim was an eight year old child. In her statement to the police, the victim stated that she had been sexually assaulted by the defendant and the defendant's brother-in-law. Id., 87–88. The victim had not, however, previously mentioned being assaulted by the defendant's brother-in-law to anyone other than the police. Id., 103. We con-

cluded that the trial court's denial of the right to cross-examine the victim concerning this discrepancy was harmful error. Id., 103–104.

In the present case, the defendant presented no evidence to the trial court concerning the alleged prior false accusation of sexual assault. In his offer of proof, the defendant claimed to know the name of the previously accused individual, but he did not know exactly when the accusation had been made, why the accusation had not resulted in a prosecution, or even whether the previous accusation was false. The court therefore refused the defendant permission to question the victim regarding the truth or falsity of the prior accusation because his offer of proof was insufficient and because the proposed line of inquiry was not relevant.

Unlike the situation in *State* v. *Ouellette,* supra, 190 Conn. 84, the victim here had not mentioned a previous assault in her statements about the incident. Without evidence of the falsity of the prior accusation, therefore, the defendant cannot show the relevance of the proposed cross-examination. As in *State* v. *Kelly,* supra, 208 Conn. 377, the victim's " 'conduct with another man [has] no bearing on her conduct with this defendant or on the credibility of her testimony in this case.' "

"The court has wide discretion to determine the scope of cross-examination. . . . Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez,* 224 Conn. 196, 208, 618 A.2d 494 (1992). The trial court did not abuse its discretion in disallowing the proposed cross-examination.

## II

The defendant next claims that the trial court improperly admitted constancy of accusation evidence. In addi-

tion to the testimony of the victim, the jury heard the victim's story from the victim's sister, the psychiatrist who treated the victim at the hospital, the admitting physician, a nurse practitioner and a police detective.

The defendant claims that the constancy of accusation doctrine is "outmoded, anachronistic and gender-biased" and violates his rights under article first, § 20, of the Connecticut constitution.[6] He also claims that the constancy of accusation testimony violated his right to confrontation under the sixth amendment to the United States constitution in that it does not fall within a recognized hearsay exception. We disagree.

At trial, the defendant claimed only that the constancy of accusation evidence violated his rights under the confrontation clause. He now seeks to prevail on the remainder of his claims under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7]

The defendant has not demonstrated that his claim that the constancy of accusation doctrine is outmoded and clearly anachronistic is of constitutional dimension. The defendant, therefore, has not satisfied the second prong of the test set forth in *Golding.* The defendant may not prevail on this claim. The defendant also seeks

---

[6] The constitution of Connecticut, article first, § 20, as amended by article twenty-first of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[7] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

to prevail under *Golding* on his claim that the constancy of accusation doctrine is gender biased and that it violated his rights under article first, § 20, of the Connecticut constitution. Although the constancy of accusation doctrine was adopted by this court in a case in which a female sexual assault victim had confided in a female friend; *State* v. *De Wolf,* 8 Conn. 93, 100 (1830); we have never restricted its application to female victims. See, e.g., *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986) (victim was adolescent boy). Because the doctrine would apply equally to male and female victims, we conclude that it is not gender biased and, therefore, does not violate the defendant's rights under article first, § 20, of the Connecticut constitution.

The defendant also claims that the allowance of constancy of accusation testimony violated his right to confrontation. The admissibility of constancy of accusation evidence has consistently been approved by this court. See, e.g., *State* v. *Parris,* 219 Conn. 283, 289–90, 592 A.2d 943 (1991); *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945); *State* v. *Kinney,* 44 Conn. 153, 156–57 (1876). Constancy of accusation evidence is admissible "when the complainant first has testified, in court, to the facts of the alleged occurrence . . . . She is then permitted to state that she made complaint to some other person. Thereupon, the person to whom she complained, out of court and in the absence of the defendant, is permitted to testify not only to the fact that a complaint was made but also to its details." (Citation omitted.) *State* v. *Segerberg,* supra, 548–49.

In approving the admission of constancy of accusation testimony, we have explained that it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred. Similarly, the victim's recitation of the details of the incident would likely be constant if the claim were true, but dis-

crepancies would be more likely to appear if the incident had not occurred. *State* v. *Kinney,* supra, 44 Conn. 156–57.

"Rather than disadvantaging a defendant, such a doctrine supplies a fertile field for cross-examination of a complainant with reference to ascertaining where the truth lies." *State* v. *Dabkowski,* 199 Conn. 193, 202, 506 A.2d 118 (1986). In addition to providing additional information on which the defendant can cross-examine the victim, the defendant can cross-examine the constancy of accusation witnesses. See *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982). The defendant's right to confrontation, therefore, has not been violated.

Additionally, constancy of accusation testimony is admissible only to corroborate the victim's testimony. *State* v. *Hamer,* 188 Conn. 562, 565, 452 A.2d 313 (1982). "Constancy evidence is properly viewed as a peculiar species of evidence, and, rather than further attempt to conform our traditionally liberal doctrine to evidentiary rules designed for other classes of evidence, we leave any curtailment of the doctrine to future cases where compelling reasons presented by litigants might persuade us to do so." *State* v. *Parris,* supra, 219 Conn. 292. We have rejected challenges to the constancy of accusation doctrine in the past and are not persuaded now by the defendant's argument. See *State* v. *Dabkowski,* supra, 199 Conn. 203; *State* v. *Kish,* 186 Conn. 757, 768, 443 A.2d 1274 (1982).

III

The defendant next challenges the admissibility of the victim's tape-recorded statement as constancy of accusation evidence. The defendant claims that admitting her tape-recorded statement enabled the victim to testify a second time without being cross-examined. In a discussion outside the presence of the jury, the

defendant conceded that a transcript of the statement would be admissible as constancy of accusation evidence. The defendant objected only to the jury hearing the statement in the victim's own voice. The court admitted the tape recording because the defendant presented no evidence to indicate that the recording was not "a reliable preservation of what the witness said at the police department."

It is immaterial that the constancy of accusation testimony was offered by the victim herself rather than by the person to whom she gave the statement. *State* v. *Hamer,* supra, 188 Conn. 565. The victim's tape-recorded statement is persuasive evidence of what she told the police when she was released from the hospital. See *State* v. *DePastino,* 228 Conn. 552, 569, 638 A.2d 578 (1994); *State* v. *Bethea,* 24 Conn. App. 13, 20, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). The defendant had the opportunity to cross-examine the victim about what she said on the tape, as well as the opportunity to cross-examine the officer about the circumstances under which her statement was recorded. The trial court, therefore, properly admitted the tape-recorded statement.

## IV

The defendant also claims that by defining a reasonable doubt as "a doubt for which a valid reason can be assigned" or as "a doubt as in serious affairs which concern yourselves, you would pay heed," the trial court diluted the state's burden of proof in violation of his state and federal constitutional due process rights. We disagree.

We have consistently upheld, against claims of constitutional error, the definition of a reasonable doubt as "a doubt for which a valid reason may be assigned." See, e.g., *State* v. *Adams,* 225 Conn. 270, 290–91, 623 A.2d 42 (1993); *State* v. *Derrico,* 181 Conn. 151, 170–71,

434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Similarly, we have upheld the definition of a reasonable doubt as "a doubt as in serious affairs which would concern yourselves, you would pay heed." See, e.g., *State* v. *Gomez,* 225 Conn. 347, 353–54, 622 A.2d 1014 (1993); *State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990).[8]

We have concluded that these definitions of reasonable doubt, when viewed in the context of an entire charge, do not dilute the state's burden of proof. The court's charge in the present case, when viewed in its entirety, clearly defined the proof beyond a reasonable doubt standard. The defendant's constitutional due process rights therefore were not violated.

V

Finally, the defendant claims that the court's charge on sexual assault in the first degree may have allowed the jury to convict him on a statutory alternative that was not supported by the evidence. Because the defendant did not preserve this claim at trial, he seeks to prevail under *State* v. *Golding,* supra, 213 Conn. 239–40.

The substitute information charged the defendant with compelling "another person to engage in sexual intercourse by the use of force against her or by the threat of the use of force which reasonably caused her to fear physical injury . . . ." The victim testified that the defendant had pulled her arms behind her back, had

---

[8] In his requested jury instructions concerning proof beyond a reasonable doubt, the defendant both requested and objected to the language on which he bases his appeal. The defendant asked the court to instruct the jury that a reasonable doubt "is a doubt for which a valid reason can be assigned" but not "a doubt for which the jury must or can 'assign' a reason." The defendant also requested that the jury be instructed that a reasonable doubt is "the kind of doubt which, in the serious affairs which concern you in everyday life, you would pay heed and attention to," but not one which "a person would 'act upon' or would 'be willing to act upon' . . . or would 'pay heed or attention to . . . .' "

forced her down the basement stairs, had ordered her to be quiet, had forced her onto the dirt floor, had held his arm against her neck so that she could not escape, had told her to remove her undergarments, and had sexually assaulted her.

The trial court instructed the jury: "The state does not have the burden to prove both the use of force and the threat of use of force. The state does have the burden to prove one or the other, that is, the defendant compelled [the victim] to engage in sexual intercourse at that time and place either by use of force against her or by threat of use of force against her which threat [of use of force] reasonably caused her to fear physical injury to herself.

"The word threat has its ordinary meaning. Threat of use of force is any indication of a person's purpose or intention to use force against another person. Such an indication may be made in any manner, whether by words or conduct.

"The state has the burden to prove that the defendant did either use force or threatened the use of force, which threat did reasonably cause [the victim] to fear impairment of her physical condition or did reasonably cause her to fear that she would receive pain.

"If upon all the evidence you find that the defendant did use force you need not consider whether he threatened her with the use of force. If, however, you find the defendant did not use force you shall then consider whether he threatened her with the use of force, which threat reasonably caused her to fear physical injury to herself."

We have recently concluded that instructing the jury on both forms of compulsion, even where the state has presented insufficient evidence of one alternative, is not a constitutional violation, but that it did constitute

harmless error in that case. *State* v. *Chapman,* 229 Conn. 529, 544–48, 643 A.2d 1213 (1994). Because the defendant has not demonstrated that a constitutional violation "clearly exists and clearly deprived [him] of a fair trial," he has failed to satisfy the third prong of *Golding.* Accordingly, he cannot prevail on this claim.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and BORDEN, Js., concurred.

BERDON, J., dissenting. I respectfully disagree and would set aside the conviction and order a new trial.

I

The trial court unduly restricted the cross-examination of the alleged victim, which I believe resulted in the infringement of the defendant's right to confrontation under the sixth amendment to the United States constitution. The defendant sought to question the victim regarding a prior, allegedly false, accusation that another person sexually assaulted her.

The state objected to this line of cross-examination on the grounds of relevance and a claimed violation of General Statutes § 54-86f, the rape shield statute. Indeed, the state had previously filed a motion in limine to prevent examination of the victim regarding this incident. On appeal, the state abandoned any reliance on the rape shield statute. See *State* v. *Cassidy,* 3 Conn. App. 374, 380–82, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), citing General Statutes § 54-86f (4) (noting that rape shield statute permits evidence of prior sexual conduct if it is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights"); *Commonwealth* v. *Bohannon,* 376 Mass. 90, 95, 378

N.E.2d 987 (1978) (rape shield statute inapplicable to impeachment evidence of prior false allegations by complainant).[1]

We recently noted that "[t]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. *State* v. *Milum,* [197 Conn. 602, 608–609, 500 A.2d 555 (1985)]. The primary interest secured by confrontation is the right to cross-examination; *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Lubesky,* 195 Conn. 475, 481–82, 488 A.2d 1239 (1985)." (Internal quotation marks omitted.) *State* v. *Colton,* 227 Conn. 231, 248–49, 630 A.2d 577 (1993). In particular, courts have allowed cross-examination or presentation of evidence regarding prior false complaints by sexual assault complainants. *People* v. *Hurlburt,* 166 Cal. App. 2d 334, 339–43, 333 P.2d 82 (1958); *Little* v. *State,* 413 N.E.2d 639, 643 (Ind. App. 1980); *Commonwealth* v. *Bohannon,* supra, 376 Mass. 93–95; *State* v. *Baron,* 58 N.C. App. 150, 152–54, 292 S.E.2d 741 (1982).

The majority appears to reject the defendant's claim for two reasons. First, it relies on *State* v. *Kelly,* 208 Conn. 365, 545 A.2d 1048 (1988), but that case is inapposite. In *Kelly,* the defendant sought to introduce testimony to show that a person previously accused of

---

[1] The defendant also argued that the evidence would be admissible under the second exception to the rape shield law. See General Statutes § 54-86f (2) (admitting evidence of prior sexual conduct of the victim if it is "offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct").

sexual assault by the victim was acquitted of the charge. Id., 375. This is clearly irrelevant. In the present case, the defendant sought to cross-examine the victim in order to obtain an admission from her that she had previously made a false complaint of sexual assault against another person. See *State* v. *Nab,* 245 Or. 454, 459, 421 P.2d 388 (1967) ("The rule is limited to the reception of evidence that the [complainant] had admitted the falsity of the charges or they had been disproved. *If, of course, she admits their falsity on the stand the evidence would be competent.*" [emphasis added]); *Covington* v. *State,* 703 P.2d 436, 442, reh. granted on other grounds, 711 P.2d 1183 (Alaska App. 1985) (cross-examination must be predicated on factual showing of falsity "or where the witness [has] conceded . . . falsity").

Furthermore, the rule in *Kelly* is qualified in a manner that makes crystal clear that this line of questioning was a proper subject of cross-examination. *"Unless she had raised a false claim before,* her conduct with another man had no bearing on her conduct with this defendant or on the credibility of her testimony in this case." (Emphasis added; internal quotation marks omitted.) *State* v. *Kelly,* supra, 208 Conn. 377; see also *State* v. *Cassidy,* supra, 3 Conn. App. 382 (trial court "was correct in noting that, unless the proffered testimony was to show that the victim previously made a false claim of sexual assault following the claimed similar, consensual sexual conduct, the evidence should be excluded").

Second, the majority suggests that the defendant was on a fishing expedition because he "presented no evidence to the trial court concerning the alleged prior false accusation of sexual assault." I agree that, generally, a defendant should not be allowed to cross-examine a complainant in a sexual assault case regarding a prior, allegedly false, accusation unless the

defendant satisfies the trial court that there is a factual predicate for the claim. See, e.g., *Commonwealth* v. *Bohannon,* supra, 376 Mass. 95; *State* v. *Demos,* 94 Wash. 2d 733, 736-37, 619 P.2d 968 (1980). Indeed, we should adopt a rule requiring a defendant who wishes to pursue such a claim to obtain a preliminary ruling from the trial court. *Covington* v. *State,* supra, 703 P.2d 442.

The defendant, however, indicated that he sought to question the victim regarding a false claim against a named third party whom he identified for the court.[2] The state, by filing its motion in limine seeking to

[2] The following excerpt from the trial transcripts indicates the foundation for the questioning provided by the defendant.

"Ms. Lifton [Defense Counsel]: I would ask her . . . isn't it true that in addition to . . . [the victim's boyfriend] that you've had sexual relations with a gentleman by the name of . . . and that in connection with those relations at one time or another—if she says yes—then I'll say isn't it also true that at one time either before, during or after your relationship with him you made an accusation of rape against him, and if she says yes then I'll go on to inquire as to . . . whether or not the accusation was true or false.

\* \* \*

"The Court: And are we going to bring [the victim's boyfriend] in?

"Ms. Lifton: No, Your Honor, I have no intention of bringing [the victim's boyfriend] in, because he was not involved in this other than the testimony we heard this morning about her having sexual relations with [him] the night before. There was no other relevance to [the victim's] relationship [with her boyfriend].

"I'm not trying to impeach the witness as to . . . her prior sexual conduct concerning any promiscuity or anything like that. There's no evidence here at all of any sexual relationship between my client and [the victim]. There's no evidence that they had a sexual relationship. So, there's no issue of promiscuity or that she went willingly with him or anything like that.

"Our defense is that the rape didn't take place. So, I'm not concerned, as a person, as a woman I'm not interested in harassing . . . [the victim] about her prior sexual history. She has a right to have boyfriends. But I think it's important the jury hear that this is not the first accusation of rape that the victim has made.

"The Court: That's not at all relevant.

"Ms. Lifton: Pardon me?

exclude the evidence, had conceded that there was a prior sexual encounter. Furthermore, the defendant offered to cut off the line of questioning should the complainant deny the existence or falsity of the prior accusation.[3] Moreover, the defendant explained that any court records that might exist concerning the prior incident were not available to him, and therefore he could not make a complete preliminary showing.[4] I recognize that the factual basis for falsity was thin, but because of the following circumstances of this case, the defendant should have been allowed to question the victim.[5]

---

"The Court: That is not at all relevant, that this is the second, third, fourth or any other number of accusations of rape.

"Ms. Lifton: It is relevant if I can show that the prior accusation was false, Your Honor, and . . . my claim is that this accusation is false. It goes to the credibility of the witness.

\* \* \*

"The Court: Counselor, the offer that you have made to the court I think is insufficient and the line of inquiry as you present it to the court is not relevant, and you may not make that line of inquiry.

"Ms. Lifton: I take exception, Your Honor.

"The Court: Yes.

"Ms. Lifton: Thank you, Your Honor."

[3] "Ms. Lifton: All I'm asking for is permission to ask her the question. She may stop me.

"The Court: Supposing she says yes, I filed a complaint.

"Ms. Lifton: And I'll ask her, was the accusation false?

"The Court: And if she says—

"Ms. Lifton: If she says no, that's the end of it. Obviously I need to have some sort of evidence that it was, if she says no. But I'm just asking for permission to ask the question."

[4] "The Court: When do you think the prior complaint was made?

"Ms. Lifton: Your Honor, I'm not sure, that's why I need to cross-examine. I believe it was made at the time the witness was thirteen or fourteen years old, and I know the name of the person against whom the complaint was made, however, I am unable to obtain any court records concerning that complaint. I have no evidence whatever that there was any formal charge brought against that other person."

[5] I note that, although he never requested it, the defendant could have been given the opportunity to determine if there was a factual basis by questioning the victim outside the presence of the jury.

There was no forensic medical evidence of forcible sexual intercourse and no other independent evidence that the defendant sexually assaulted the victim. The defendant claimed an alibi defense, and disclaimed any sexual contact with the victim. The only evidence linking the defendant to the alleged assault was the in-court and out-of-court statements of the victim. The out-of-court hearsay statements of the victim were admitted as constancy of accusation evidence through very credible witnesses—a police officer, a nurse, a psychiatrist, and the examining physician. As if this was not enough, the trial court admitted into evidence the tape recording of the victim's out-of-court complaint to the police. Under these circumstances, it was crucial that the defendant be allowed liberal cross-examination of the victim.

Accordingly, I would hold that the trial court abused its discretion in not allowing the defendant to pursue his cross-examination of the victim, reverse the conviction and order a new trial. "[T]he proffered question would have gone to the very heart of the witness' credibility. . . . The proffered cross-examination, if successful, could have cast sufficient doubt on the prosecuting witness' credibility to render her unworthy of belief in the mind of at least one juror. Therefore, the error in this case was harmful, and [the defendant's] conviction must be reversed." *State* v. *Cox,* 298 Md. 173, 184–85, 468 A.2d 319 (1983).

## II

I continue to be concerned about the contours of the rule admitting constancy of accusation evidence in sexual assault cases. *State* v. *DePastino,* 228 Conn. 552, 573, 638 A.2d 578 (1994) (*Berdon, J.,* dissenting). In the present case, on appeal, the defendant argues that the rule is founded on premises that are anachronistic, outmoded, and sexist.

The genesis of the rule in Connecticut is found in *State* v. *De Wolf,* 8 Conn. 93, 100 (1830): "If a female testifies, that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her female friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it, and that testimony should be received to confirm her story." This reasoning reflects the nineteenth century thinking that women were second class citizens who could not be believed without corroboration. This sexist attitude, a symptom of our nation's "long and unfortunate history of sex discrimination" (internal quotation marks omitted); *J. E. B.* v. *Alabama ex rel. T. B.,* U.S. , 114 S. Ct. 1419, 1425, 128 L. Ed. 2d 89 (1994); was reinforced by the absolute exclusion of women from the judicial process at that time. "[U]ntil the 19th century, women were completely excluded from jury service" in the United States and "[m]any States continued to exclude women from jury service well into the present century, despite the fact that women attained suffrage upon ratification of the Nineteenth Amendment in 1920." Id., 1422–23. There were no female members of the Connecticut bar until 1882. *In re Hall,* 50 Conn. 131 (1882); see *Bradwell* v. *State,* 83 U.S. 130, 141 (1872) (Bradley, J., concurring) (under "the law of the Creator," women were destined to "fulfil the noble and benign offices of wife and mother" and were "evidently [unfit] . . . for many of the occupations of civil life" including law). Finally, there were no female members of the judiciary in Connecticut in 1830 and, in fact, there were none for the next 130 years.[6] In this social con-

---

[6] There were no female members of the judiciary until 1960, when Margaret Connors Driscoll was appointed to the Juvenile Court. Hartford Courant, July 16, 1970, p. 42, col. 1. In 1972, JoAnne Kiely Kulawiz became the first woman judge to preside in any court other than the Juvenile Court when she was appointed to the Circuit Court. Hartford Courant, March 26, 1972, E1, col. 1.

text, it is not surprising that prosecutors needed something more than a woman's uncorroborated word to obtain a conviction.

In succeeding generations, ironically, the constancy rule broadened in scope even as inroads were made against sex discrimination. In 1876, the court allowed out-of-court revelations about the details of the sexual assault by complainants to be admitted. "Why has the rule been adopted that in prosecutions for rape, and for attempts to commit rape, the public prosecutor may show that the woman on whom the assault was made complained of it to her friends? It is simply because such a course would be natural if the crime had been committed, but very unnatural if it had not been. But her natural impulses would prompt her to tell all the details of the transaction. Why, on the same principle, ought not her statement of the details to be evidence? . . . If her story were true, the evidence would show constancy in the charge even to the details, and the truth [of her testimony] would the more clearly appear." *State* v. *Kinney,* 44 Conn. 153, 156–57 (1876).

Although such evidence is arguably justified in certain circumstances as a form of prior consistent statement testimony, provided the requirements of that rule are met,[7] the admission of details, for all practical purposes, transforms the rule into "a true hearsay exception, not just a rule of credibility." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.22.1, p. 410; see *State* v. *Ouellette,* 190 Conn. 84, 97, 459 A.2d 1005 (1983); *State* v. *Hamer,* 188 Conn. 562, 565, 452 A.2d 313 (1982) (statements "admissible as an exception to the hearsay rule to corroborate the complainant's tes-

---

[7] See *Thomas* v. *Ganezer,* 137 Conn. 415, 419–20, 78 A.2d 539 (1951) (prior consistent statements admissible to rebut claim of recent fabrication); see generally *State* v. *Jeffrey,* 220 Conn. 698, 713–14, 601 A.2d 993 (1991), cert. denied, U.S. , 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992).

timony by showing constancy of accusation").[8] In admitting the details, Connecticut stands nearly alone in modern American jurisprudence.[9]

Simply put, the hearsay exception of constancy of accusation is predicated on the assumption that unless the victim—who in most instances is a female—announces to the world that she has been a victim of a sex crime, her credibility is suspect. Indeed, the majority endorses this justification when it states that "it would be natural for the victim of actual or attempted sexual assault to relate the incident to others if it had actually happened, but not if the incident had not occurred." I find this rationale to be offensive. We do not engage in this reasoning with respect to any other crime involving an adult victim.

Furthermore, the empirical assertion that an actual victim of sexual assault would naturally relate the incident to others stands in opposition to the real experiences of women reported in the literature. S. Estrich, "Rape," 95 Yale L.J. 1087, 1088–89 (1986).[10] In addi-

---

[8] The transformation of the rule into a functional hearsay exception was completed when this court held that "the trial court may presume . . . that the victim is impeached by a suggestion of recent contrivance." *State* v. *Ouellette,* supra, 190 Conn. 99.

[9] Professor Wigmore identified only one other jurisdiction, Tennessee, that, in this century, has stated its willingness to allow testimony of details related by an adult victim. 4 J. Wigmore, Evidence (1993 Sup.) p. 400, citing *State* v. *Sanders,* 691 S.W.2d 566 (Tenn. Crim. App. 1984) (victim was child but rule set out in general terms). There are several jurisdictions that will allow testimony of details if the victim is a young child. See, e.g., *People* v. *Marrs,* 125 Mich. 376, 379–80, 84 N.W. 284 (1900). Otherwise, although constancy evidence is admitted in many states, it is almost universally limited to the bare fact of a complaint, or the fact of a complaint plus the identification of the perpetrator. "That she complained of a rape, or an attempt at rape, is all that principle permits; the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearsay assertion, and as such it is inadmissible . . . ." 4 J. Wigmore, supra, (4th Ed. 1972) § 1136, p. 307.

[10] The "rape victim must bear the heavy weight of the silence that surrounds this crime. At first, it is something you simply don't talk about. Then

tion, the second assumption underlying this empirical claim—"but not if the incident had not occurred"—defies common sense. If anything, the rule gives a person who has fabricated an assault an incentive to report the crime and its "details" to friends and acquaintances.[11] Therefore, constancy evidence not only has its origin in a sexist assumption, but allows inherently unreliable evidence to support a criminal conviction.

Nevertheless, I do not reach the ultimate issue of whether societal concerns have undermined the continued viability of the constancy of accusation rule in this state. I leave it to another day when the issue is appropriately raised before the trial court.[12]

Accordingly, I respectfully dissent.

it occurs to you that people whose houses are broken into or who are mugged in Central Park talk about it all the time. Rape is a much more serious crime. If it isn't my fault, why am I supposed to be ashamed? If I shouldn't be ashamed, if it wasn't 'personal,' why look askance when I mention it?" S. Estrich, supra, 95 Yale L.J. 1088–89; see State v. Hill, 121 N.J. 150, 158–59, 578 A.2d 370 (1990) (continued adherence to corroboration requirement "willfully ignored . . . the possibility that women would keep silent about rape because more than any other violent crime it could shed shame and embarrassment on the victim").

[11] On the other hand, this court has stated another justification for the rule. "Our present doctrine of constancy of accusation facilitates the prosecution of an outrage which is almost always 'an inherently furtive act.' People v. Linzy, 31 N.Y.2d 99, 103, 286 N.E.2d 440, 335 N.Y.S.2d 45 (1972)." State v. Dabkowski, 199 Conn. 193, 202–203, 506 A.2d 118 (1986). I recognize the reality that sexual assault trials, when turning on credibility as in the present case, are not only difficult to defend, they are also difficult to prosecute. Nevertheless, the present case is evidence that this court has tipped the scales in favor of the prosecution because the defendant was prevented from effectively cross-examining the complainant and challenging her credibility, even after her credibility was bolstered by the admission of her tape-recorded statement and the testimony of the four witnesses through whom the hearsay statements were admitted.

[12] The state points out that these societal concerns were not raised in the trial court. Although the defendant raised the validity of the constancy of accusation rule under the federal and state constitutions, I need not reach the issues in this dissent because I would reverse on the cross-examination issue. Neither do I reach the remaining issues discussed by the majority.